THE HUYETT & SMITH MANUFACTURING COMPANY

*v.*

THE CHICAGO EDISON COMPANY.

*Filed at Ottawa June 8, 1897.*

1. APPEALS AND ERRORS—*Appellate Court may draw conclusions from agreed facts.* A stipulation of facts in a case must be treated in the same way that evidence would be treated had witnesses been sworn, and the Appellate Court may draw conclusions therefrom in determining the ultimate facts on which the case depends.

2. SAME—*Appellate Court's finding of facts is final in suits tried before the court on agreed evidence.* The provision of section 87 of the Practice act, (Laws of 1877, p. 153,) that the Appellate Court's finding of facts differing from the trial court's shall be final and conclusive when the facts as found are recited in its judgment, applies to cases tried in the lower court without a jury, on agreed evidence.

3. CONTRACTS—*when contract is entire.* A contract to place a ventilating system in a building for a lump sum, payment to be made thirty days after acceptance of the work, is an entire contract.

4. SAME—*destruction of subject matter of entire contract prevents recovery for part performance.* There can be no recovery, on a *quantum meruit* or otherwise, for a part performance of an entire contract, the subject matter of which has been destroyed, without fault of either party, before the contract was fully performed.

*Huyett & Smith Co.* v. *Chicago Edison Co.* 66 Ill. App. 222, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This was an action brought by the Huyett & Smith Manufacturing Company, a corporation of Detroit, Mich., against the Chicago Edison Company, a corporation of Chicago, upon a *quantum meruit* to recover for materials furnished and labor performed under an express contract, which was not completed by the plaintiff by reason of the destruction by fire of the building to which the materials were to be attached. In the circuit court the parties waived a jury, and a trial was had before the court on an agreed written statement of facts.

It appears from the facts that in the spring of 1893 the defendant, the Chicago Edison Company, entered into a contract with the National Temple of Music to place in the First Regiment Armory an equipment for electric lighting and electric power purposes, and to furnish light and power for six months, from April 20 to November 6, 1893, for $13,000, according to the plans and specifications of Adler & Sullivan, architects.   Part of the equipment consisted of a ventilating system for the building.   That portion, with the exception of the electric motors, was sub-let to the plaintiff, the Huyett & Smith Manufacturing Company, under the following contract:

"CHICAGO, *April 4, 1893.*
"*The Chicago Edison Company, City:*

"GENTLEMEN—For the sum of thirteen hundred and fifty ($1350) dollars, payable thirty (30) days after the completion and acceptance of the installation, we propose to furnish and erect at First Regiment Armory building, corner of Michigan avenue and Sixteenth street, Chicago, a ventilating system, including everything excepting electric motors, in accordance with the specifications of Messrs. Adler & Sullivan, architects, which are hereunto attached and hereby made a part of this proposal.   We guarantee that the ventilating system which we propose to install will do the work required by the specifications, and the entire installation will be made satisfactory to Messrs. Adler & Sullivan, architects.   We agree that if at the time of the expiration of the amusement season, which is not to be later than December 1, 1893, we will, if you desire us to remove the ventilating system from this building, pay you for the same the sum of $400.   It is further agreed that this entire installation will be completed and turned over to you in satisfactory working order not later than May 1, 1893.   The above price does not include any work in connection with the electric motors or belts, and it is agreed that the apparatus shall be a .cepted or rejected within thirty (30) days after the plant has been installed, and that the use of bottom horizontal fans will not be objectionable.     "Respectfully,
HUYETT & SMITH MFG. Co.,
By C. B. CORBY, *Western Manager.*

"Accepted.—THE CHICAGO EDISON Co., by L. H. Ferguson."

After the making of said contract the plaintiff company proceeded in the performance of it, and caused the fans mentioned therein to be manufactured and delivered at the building in question, and also furnished the materials and performed the labor necessary to be done in order to place the fans in position for use in accordance with the specifications. One of the fans had been placed in position, the other one was on the roof, with a hole cut in the roof, ready to be lowered through to its position. There remained, on or about the 26th day of April, 1893, (the date upon which the building was destroyed by fire,) to be performed under said contract and the specifications therein referred to by the plaintiff company, the placing of the second of said fans in position, the closing up of the roof that had been cut open for the purpose of lowering the fan into position, and the belting of the apparatus, and a few other incidentals. Up to that date the plaintiff company had furnished the materials and performed the work set forth in its bill of particulars filed with the declaration herein, which are of the value set out in the said bill of particulars, the said bill of particulars being in words and figures as follows:

"DETROIT, MICH., *May 25, 1893.*

"The Huyett & Smith Mfg. Co.,

Sold to Chicago Edison Co., Chicago, Ill.

| | |
|---|---:|
| 2 steel plate fans | $900.00 |
| 1600 lbs. galv. iron piping | 160.00 |
| Labor   "   "   " | 40.00 |
| Carpenter work | 20.00 |
| Freight | 30.00 |
| Cartage and hoisting fans | 80.00 |
| | $1,230.00" |

It appears that the work was not completed, and that the defendant company had not been asked to accept it. It also appears that a fire occurred at the armory building on April 26, 1893, which destroyed the building. The fire occurred without the fault of either of the parties

to this action. Neither plaintiff nor defendant had any control of the building, or anything in it except each its own materials.

In the circuit court the plaintiff recovered a judgment for $1230, which, on appeal, was reversed in the Appellate Court, and the facts as found by the Appellate Court were recited in its final judgment.

BULKLEY, GRAY & MORE, for appellant.

ISHAM, LINCOLN & BEALE, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It is plain from the record that the Appellate Court did not reverse the judgment on account of any erroneous ruling of the circuit court on propositions of law. If the reversal had been for that reason the cause would have been remanded, so that the error could have been corrected on another trial. On the other hand, it is plain that the Appellate Court found the facts different from the circuit court, and reversed because on the facts as found the plaintiff could not recover. Upon going to the record it will be seen that the Appellate Court made the following finding of facts: "And the court finds that, under the agreed statement of facts in this case, the property which the plaintiff, in accordance with its contract of April 4, 1893, placed in the First Regiment Armory, was, at the time of its destruction by fire, that of the plaintiff, and that the contract of April 4, 1893, between the plaintiff and defendant, contemplated that the First Regiment Armory would remain in existence so that the plaintiff could do the work thereon by its said contract undertaken, and that the destruction by fire of the First Regiment Armory and the property placed therein by the plaintiff, without the fault or negligence of either the plaintiff or defendant, terminated the said contract, and that the plaintiff, because of such fire and destruction,

not having completed or complied with its contract, is not entitled to recover anything from the defendant for goods furnished and the work done by it under its said contract, and therefore the court finds that the defendant did not undertake or promise as the plaintiff in its declaration alleged, and therefore final judgment for the defendant is here entered."

The Appellate Court having found the facts different from the circuit court and incorporated that finding in its final judgment and reversed on the facts, is any question of law presented for our consideration?

Section 87 of the Practice act (Hurd's Stat. p. 1023,) provides: "If any final determination of any cause, as specified in the preceding sections, shall be made by the Appellate Court as the result, wholly or in part, of the finding of the facts concerning the matter in controversy different from the finding of the court from which such cause was brought by appeal or writ of error, it shall be the duty of such Appellate Court to recite in its final order, judgment or decree the facts as found, and the judgment of the Appellate Court shall be final and conclusive as to all matters of fact in controversy in such cause." Under this statute it is manifest no question of law is presented by the record before us for our consideration. The question is not a new one in this court. The same question arose in *Rogers* v. *Chicago, Burlington and Quincy Railroad Co.* 117 Ill. 115, and we held that no question of law was involved. See, also, *Williams* v. *Forbes,* 114 Ill. 167, where the same question was involved.

It is, however, said in the argument, that the facts were agreed upon in the circuit court, and hence the section of the statute cited is inapplicable. Where the parties in a case pending in the circuit court make an agreement in regard to what the facts or the evidence may be upon which the court is to decide the case, that agreement takes the place of the evidence of witnesses who might, in the absence of an agreement, be called and give their evidence

in court, and the agreement is to be treated in the same way as the evidence would be treated if the witnesses had been called and sworn. When the case reaches the Appellate Court the question is not what A, B or C has sworn to on the trial or what the stipulation may be in regard to this or that particular fact; but the question is, what is the ultimate fact or facts upon which the rights of the parties depend? As was properly said in *Brown* v. *City of Aurora*, 109 Ill. 165 (on p. 168): "The Appellate Court, where it differs from the conclusions reached by the trial court, is required to recite in its final order the facts as found by that court. The expression 'facts as found,' necessarily implies the drawing of a conclusion or inference from the evidentiary facts embodied in the bill of exceptions, and this conclusion or inference to be drawn is nothing more than the *factum probandum*, or ultimate fact or facts, upon which the case depends and which it was the duty of the Appellate Court to find." Here the Appellate Court found in the bill of exceptions a stipulation of the parties used on the trial, which purported to be the evidence upon which the trial court decided the case. From the evidence thus presented the Appellate Court determined what the ultimate facts were, and incorporated that finding in the final judgment. The judgment of the Appellate Court was predicated on that finding, and the statute says the judgment shall be conclusive as to all matters of fact.

But, conceding that the record presents the question of law which has been discussed in appellant's argument, we are not prepared to hold that the judgment of the Appellate Court is erroneous. On the trial in the circuit court the court held that the destruction of the building in question by fire annulled the contract and "excused the plaintiff from performance of it, and it excused the defendant from paying the contract price, and left the parties in exactly the same condition as though no contract had been made, and therefore that the plaintiff is

entitled to recover, under the common counts, for the value of the materials furnished and labor performed." As we understand the contract, the materials which the appellant furnished at or in the building never became the property of the appellee. They were destroyed without the fault of appellee, and upon what principle the plaintiff could recover under the common counts, or under any form of declaration, for the value of the materials furnished and labor performed we do not perceive. The labor was performed and the materials were furnished under a contract entered into between the parties, and by that contract the rights and the obligations of the parties must be determined. The rule is well settled that where labor has been performed and services rendered under an express contract, a recovery must be had, if at all, on the contract. If the contract had been separable, providing for the payment of a certain sum of money at a specified date upon the delivery of certain articles in the building, the plaintiff, so far as it had performed, might be entitled to recover. But such is not the contract. On the other hand, the contract is entire, providing that appellee was to be paid $1360 thirty days after the completion and installation of a ventilating system in the building, in accordance with certain plans and specifications.

In Parsons on Contracts (vol. 2,—8th ed.—517,) the author says: "If the part to be performed by one party consists of several separate and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. * * * And if the consideration to be paid is single and entire the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items."

In *Adams* v. *Nichols*, 19 Pick. 275, where a person contracted to build a house on the land of another and the

house was destroyed by fire before its completion, it was held that the contractor was not discharged from his obligation to fulfill his contract. It is there said: "The general rule on this subject is laid down and well explained in a note to *Walton* v. *Waterhouse*, 2 W-m. Saund. 422. It is, that where the law imposes a duty upon any one, inevitable accident may excuse the non-performance, for the law will not require of a party what, without any fault of his, he becomes unable to perform. But where the party, by his agreement, voluntarily assumes or creates a duty or charge upon himself, he shall be bound by his contract, and the non-performance of it will not be excused by accident or inevitable necessity, for if he desires any such exception he should have provided for it in his contract."

In *Tompkins* v. *Dudley*, 25 N. Y. 272, where there was a contract to build a school house for the sum of $678, and the building was destroyed when almost completed, it was held that the contract was entire and that money advanced on the contract could be recovered back. It is there said: "He was not only to complete it in accordance with its terms, but was to deliver it over to the plaintiffs thus finished, or offer to deliver it, before his whole duty was performed. Now, it is undeniable that the builder did not do this. * * * This court has declared the law in this State to be, that a contract for the building of a vessel or other thing *in esse* does not vest any property in the party for whom it is to be constructed during the progress of the work, nor until it is finished and delivered, or at least ready for delivery, and approved by such party. * * * And it was also held that the law is the same though it be agreed that payment shall be made to the builder during the progress of the work, and such payments are made accordingly."

In *Wells* v. *Calnan*, 107 Mass. 515, the same rule is declared, as follows: "When property, real or personal, is destroyed by fire, the loss falls upon the party who is the

owner at the time, and if the owner of a house and land agrees to sell and convey it upon the payment of a certain price which the purchaser agrees to pay, and before full payment the house is destroyed by accidental fire, so that the vendor cannot perform the agreement on his part, he cannot recover or retain any part of the purchase money." See, also, *Steamboat Nellsville* v. *Geise*, 3 Ohio St. 337.

There are many other cases where the same doctrine is announced, but it will not be necessary to cite them here, as this court is fully committed to the doctrine that where a contract is entire, as is the case here, and the property has been destroyed by fire without the fault of either before the contract has been fully performed, no recovery can be had. Thus, in *Siegel* v. *Eaton*, 165 Ill. 550, in the discussion of the question it is said (p. 557): "We think the law is, that where a contract is entered into with reference to the existence of a particular thing, and that thing is destroyed before the time for the performance of the contract, without the fault of either party, both parties are excused from performing the contract, but neither is entitled to recover anything for a part performance thereof."

Under the rule announced in the case last cited it is apparent no recovery could be had here. Appellant, by the contract, was to put in and complete the ventilating system for $1360, payment of the entire sum to be made thirty days after the work was completed. Before the work was completed, as shown before, the building where the work was being done was destroyed by fire without the fault of either party. The contract was entire, and no recovery could be had by appellant unless it fulfilled the contract, which was never done.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*