IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 30, 2001 Session

# JAMES A. COLLINS, ET AL. v. SUMMERS HARDWARE AND SUPPLY COMPANY

**Appeal from the Circuit Court for Washington County**
**No. 20085      Thomas J. Seeley, Jr., Judge**

---

**No. E2001-00578-COA-R3-CV       Filed March 27, 2002**

---

This is a suit by Plaintiffs James A. Collins and Gary Smith seeking damages from their former employer, Summers Hardware and Supply Company, in connection with their employment. The Plaintiffs contend that Summers Hardware made certain deductions from their pay which were contrary to their employment contract. Summers Hardware asserts otherwise. A jury found this issue in favor of the Plaintiffs and assessed damages, which the Trial Court, on motion of the Plaintiffs, altered upward. Summers Hardware appeals questioning whether the statute of limitations has run as to Mr. Collins' suit and whether both parties were estopped to press the claim or had waived their right to assert it. Summers Hardware also contends the Trial Court was in error in increasing the jury award without giving them the option of receiving a new trial. We affirm.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which Herschel P. Franks, J., joined. D. MICHAEL SWINEY, J., not participating.

Rick J. Bearfield, Johnson City, Tennessee, for the Appellant Summers Hardware and Supply Company

Mark M. Lawson, Bristol, Virginia, for the Appellees, James A. Collins and Gary Smith

## OPINION

James A. Collins and Gary Smith, former employees-at-will of Summers Hardware and Supply Company sue the Company for commissions they contend they were entitled to, which were not paid. A jury returned a verdict finding that their insistence was correct and awarded Mr. Collins $7500 and Mr. Smith $13,000.

The Trial Court overruled Summers Hardware's motion to alter or amend or for a new trial, except $387.94. contended to be owed Summers Hardware by Mr. Smith. The Plaintiffs likewise filed a motion to alter or amend and the Trial Court increased Mr. Collins' award to $15,087.21 and Mr. Smith's to $25,793.36.

Summers Hardware appeals, raising a number of issues which we will summarize and re-state as follows:

1. The Trial Court should have found that the employment contract with Mr. Smith[1] was divisible or severable, resulting in the statute of limitations beginning to run upon his receiving his first pay check, which was more than six years prior to October 20, 1999, the date this suit was filed.[2]

2. The Trial Court should have directed a verdict on Summers Hardware's defense of estoppel and should not have submitted that issue to the jury.

3. The jury was in error in finding the Plaintiffs had not waived their rights to assert their claims for breach of contract.

4. The Trial Court erred in altering the judgment, which in effect was an additur without granting Summers Hardware the right to refuse the additur and be granted a new trial.

Mr. Smith was employed by Summers Hardware from September 8, 1992, to June 25, 1999, and Mr. Collins from March 14, 1994, to March 10, 1999.

It was the Plaintiffs' theory that they were employed as at-will commission salesmen, and the compensation agreed upon was a flat commission of 22.5 percent of the difference between the sales price to customers and cost of the goods to Summers Hardware.

It was Summers Hardware's theory that the agreement was that they should receive the 22.5 percent heretofore referenced, less deductions for medical insurance and Summers Hardware's share of Social Security.

Although the check stubs the Plaintiffs received had standard deductions, such as the employees' portion of Social Security provisions and withholding tax, it did not disclose any deduction for the employer's share of Social Security or for health insurance.

---

[1] The statute of limitations as to Mr. Collins had not run.

[2] The Trial Court limited Mr. Smith's recovery to those damages suffered in the six years preceding the filing of the complaint.

While it is true, as argued by Summers Hardware, that both Plaintiffs knew after the first few pay checks that the amount received in their monthly payments was, as Mr. Smith put it, "a little bit shy," we do not believe this knowledge was sufficient to trigger the running of the statute of limitations. We say this because there is proof in the record which the jury could have and, under the verdict, most likely did believe that the officials of Summers Hardware deceived the Plaintiffs by contending the deductions made were for "telephone costs, paper work, etc." There is also proof that Summers Hardware refused to show the Plaintiffs the commission reports, which disclosed the deductions in question. These were kept in a vault and according to the pay master were not to be shown to the employees absent authorization by Summers Hardware. There is also proof that when inquiry was made one of the officers told them that "I will get back to you," but he never did.

Finally and perhaps the most damning proof insofar as Summers Hardware's defense is concerned, the handbook given to both employees specifically provided the following:

## EMPLOYEE BENEFITS

. . . .

## HEALTH INSURANCE

The company provides group health insurance which is underwritten by a national carrier, Charter Benefits. After 90 days of employment you become eligible. At that time you will be given the opportunity to accept the insurance coverage. The insurance company provides a booklet explaining the various benefits, a copy of which will be given to you when you join the program.

The company pays all the premiums of the employee. (Emphasis supplied.)

Summers Hardware also pleaded as to Mr. Smith that his claim was barred by the applicable six-year statute of limitations and, in addition, that they both had waived their right to assert their claim or estopped to do so.

At the close of the trial the jury returned a special verdict as follows:

VERDICT

Under the terms of the contract that the jury finds existed between the parties, the jury reports as follows:

COLLINS

1. Did Collins by his conduct knowingly and intentionally waive any breach of contract by Summers?

Yes _____          No _✓_

If no, proceed to Question 2

2.  Did the parties agree that collins would receive as his gross pay 22.5% of Summers' gross profit reduced by Summers' cost of social security and health insurance?

Yes _____          No _✓_

If you answered "Yes", then answer Question 3.B. ONLY.  If you answer "No', then proceed to Question Nos. 3A. and 3B).

3.  Based upon your finding in Question NO. 2:

A.  Summers owes Collins for unpaid commission at 22.5%   $7500.00

B.  Summers owes Collins for unpaid commission at 16.5%   $__O__

TOTAL OWED TO COLLINS                                    $7500

## SMITH

1.  Did Smith by his conduct knowingly and intentionally waive any breach of contract by Summers?

Yes _____          No _✓_

If no, proceed to Question 2

2.  Did the parties agree that Smith would receive as his gross pay 22.5% of Summers' gross profit reduced by Summers' cost of social security and health insurance?

Yes _____          No _✓_

If you answered "Yes", then Smith cannot recover.  Proceed to the next section.  If you answer "No", then proceed to Question No. 3.

3.  Based upon your finding in Question No. 2:

Summers owes Smith for unpaid commission at 22.5% from October 20, 1993 (but not prior to that time)                      $13,000

-4-

TOTAL OWED TO SMITH                                    $13,000

SUMMERS

1.  Does Smith owe Summers on Smith's customer accommodation charge account?

Yes _____          No ___✓___

2.  If yes, how much does Smith owe Summers:                    $ 0.00

/s/ ____(Not Legible)_____
FOREPERSON

DATE __11/10/00__

Under Tennessee law it is clear that the statute of limitations begins running as to a contract when the cause of action accrues.  It is also clear that as to entire contracts, as distinguished from severable contracts, a single cause of action arises upon a breach occurring.  As to severable contracts, however, breaches give rise to separate causes of action which may accrue at different times.  Both points are articulated in the case of Greene v. THGC, Inc., 915 S.W.2d 809 (Tenn. Ct. App. 1995).

What is not clear is which contracts are entire and which are severable.

A number of cases have addressed the question, which we will now detail:

Barnes, et al. v. Black Diamond Coal Co., 47 S.W. 498 (Tenn. 1898)

In this case, which is the oldest one to which we have been cited, the plaintiff was seeking rents claimed to be owed under a lease which was for one year at a rental of $30 per month.  A previous suit had been filed as to rent earlier due but not paid, which was pleaded by the defendant as a bar to the present suit under the theory of *res judicata*.  In addressing the question our Supreme Court found the contract was severable and stated the following (at page 498):

It is next said the matter is res judicata.  It appears that, previous to the present suit, complainants brought an action for the rents of December, 1895, and January and February, 1896, and recovered $90, or at the rate of $30 per month for the three months.  The rents previous to December, 1895, were paid.  It is insisted this is a bar to any further action for the breach of this contract.  The argument is that the contract is entire for the term, even although the rental is so much per month, and, being an entire contract, there can be but one breach and

-5-

one recovery therefor. If the contract is an entirety, and not divisible, it must follow, under the authorities, that there can be but one breach and one recovery. Tarbox v. Hartenstein, 4 Baxt. 78; Railroad Co. v. Staub, 7 Lea, 397. A single cause of action cannot be split in order that separate suits may be brought for the various parts of what really constitutes but one demand. 1 Enc. Pl. & Prac. pp. 148, 153. Taking judgment by mistake for a less sum than due will not justify the plaintiff in recovering the residue in another action. Saddler v. Apple, 9 Humph. 342; 1 Enc. Pl. & Prac. 150, note; Thomason v. Rice, 1 Shannon, 70. As to when a contract is entire, and when it is divisible, is a question upon which there is a great confusion among the cases. It is said: "Whether a contract is entire or separable into several independent contracts depends upon the intention of the parties, to be ascertained from the language employed and the subject-matter of the contract." 1 Enc. Pl. & Prac. pp. 150, 152, note 1; Pollak v. Association, 128 U. S. 446, 9 Sup. Ct. 119; Shinn v. Bodine, 100 Am. Dec. 560; Huyett & Smith Mfg. Co. v. Chicago Edison Co. (Ill. Sup.) 59 Am. St. Rep. 278, 47 N. E. 384, and cases there cited. And again: "Common sense must be applied to each case, rather than any technical rules of construction." Leonard v. Dyer, 26 Conn. 172. The general test rule to determine whether a contract is divisible or entire is stated by Mr. Parsons thus: "If there are many parts of the contract, and some have been broken, and others not yet, as if money was to be paid on the 1st of every month for two years, and one year has expired, and nothing has been paid, the creditor may bring his action for one or more of all the sums due, and recover accordingly, and may, when the others fall due and are unpaid, sue for them." 3 Pars. Cont. (5th Ed.) 188, 189. To the same effect, see Huyett & Smith Mfg. Co. v. Chicago Edison Co. (Ill. Sup.) 59 Am. St. Rep., note on page 279 (s. c. 47 N. E. 384), where the authorities are cited and fully collated.

The distinction between the two classes of contracts is plainly stated in Coleman v. Hudson, 2 Sneed, 465, as follows: "In the former [entire contracts] the consideration is entire on both sides. It does not, either by its terms or the implied intention of the parties, contemplate or admit of apportionment upon a partial failure on either side; and the complete fulfillment of the contract by either is required as a condition precedent to the fulfillment of any part of the contract by the other. A severable contract is a contract the consideration of which, by its terms, is susceptible of division and apportionment. There is in such cases no entirety of consideration on either side, constituting a condition of the agreement; and neither party can claim more than an equivalent for the actual consideration on his part. [Citing authorities.] There is another class of cases, noticed in some of the books, of a mixed nature, partaking of the character both of entire and severable contracts, and which may be considered as entire or severable, according to the circumstances of the particular cases. Story, Cont. § 24." It was held in that case that a contract to deliver, for a price named therein, from 100 to 150 head of beef cattle from the 1st of February to the last of July, in lots of 20 or

more monthly, and all the hogs that are fed with the cattle, at the market price, was divisible into several contracts as respects the remedy, for a breach of either of which a separate action would lie. As illustrating the rule, it is held that, when a promissory note is payable in installments, an action may be maintained for each installment when it becomes due, and the statute of limitations begins to run from that time. Bush v. Stowell, 10 Am. Rep. 694. See, also, Badger v. Titcomb, 26 Am. Dec. 611-613; Lorillard v. Clyde (N. Y. App.) 25 N. E. 292. See, also, Coleman v. Hudson, 2 Sneed, 463. Installments of rent are subject to the same rule as installments of money due, and an action may be brought as each installment falls due. 1 Enc. Pl. & Prac. 155, note 3; Steinkuhl v. Hardin (Jackson, 1875) 1 King's Dig. p. 561. The cases, it appears, however, are uniform in holding that contracts for personal service must be treated as entire, and not divisible; and hence there can be but one breach and one recovery upon default, no matter if the wages are payable by installments or at stated periods. See the cases collated in Huyett & Smith Mfg. Co. v. Chicago Edison Co. (Ill. Sup.) 59 Am. St. Rep. 290 (s. c. 47 N. E. 384). And in accord with this holding are our cases of Hughes v. Cannon, 1 Sneed, 622, Tarbox v. Hartenstein, 4 Baxt. 78, and Railroad Co. v. Staub, 7 Lea, 397. Whether this distinction arises out of the nature of the contract, or is based on some other ground, it is well recognized and enforced in cases where the holding would evidently be different if it were not a contract for personal services; and, whether based on sound reasons or not, we must recognize contracts for personal services as entireties. But, in regard to rentals, there is, perhaps, no more common form of contract than a rental by the year, payable monthly; and it cannot on any sound reason be held that if the tenant breaches the contract, and abandons the premises, a suit for the first month's rent would bar a recovery for subsequent months as they accrue.

We are of opinion, further, that the statute, Shannon's Code, § 4620, is applicable to this case. It provides that "successive actions may be maintained on the same contract or transaction whenever after the former action a new cause of action arises therefrom." A new cause of action arises and becomes enforceable with every successive installment. It is not meant that a complainant can unnecessarily vex the defendant with successive small suits, for in such cases injunction will lie to prevent multiplicity of suits; and accordingly it is a well-established rule that, when an action is brought to collect installments, it should include all then due, and that those then due constitute together but one cause of action, and some of the cases go to the extent that a recovery in one suit will bar a second action to recover other similar claims or installments that were due when the first was brought. 1 Enc. Pl. & Prac. p. 155, notes 2 and 3, and cases cited. We are of opinion that there is no error in the decree of the court of chancery appeals, and it is affirmed, with costs.

Menihan Co. v. Hopkins, 164 S.W. 775 (Tenn. 1914)

In this case an employee was hired for a salesman for a period of one year at a compensation of $1500 to be paid monthly at the rate of $125. He contends he was wrongfully discharged "near the middle of the contract year about June 1."

The Supreme Court held that this contract should be treated as an entire and indivisible one, that only one cause of action accrued, and that a prior action filed would be a bar under the doctrine of *res judicata* as to any actions for salaries as to subsequent months. In so doing the Court used the following language (at page 776):

> It follows that, so far as regards the period following a wrongful discharge, the contract being entire, only a single action based on the breach is maintainable. Authorities, supra. And that the bringing of suit by the employé for services during a part of such period before the year has expired (and damages thus ascertained) becomes res adjudicata, barring a second action for services during a subsequent portion of the period.

> The fact that the employé has set forth in his pleading that his suit was for "salary for the months" above indicated cannot avail to split the entire contract so as to defeat the employer's right of set-off. The action in behalf of the employé was one for damages incident to the breach of the contract as an entire one, and not, after breach, for salary for any given month or months. In Olmstead v. Bach, 78 Md. 132, 27 Atl. 501, 22 L. R. A. 74, 44 Am. St. Rep. 273, the true rule is well stated: "The employé had no option as to the remedies which he might pursue. He was confined to an action for the recovery of damages which he had sustained by a breach of the contract, because successive actions instituted for the recovery of fractions of the same aggregate damages cannot be supported. His suit before the magistrate was, whatever it purported to be, a suit for the breach of the contract of hiring. *** There was but one dismissal and but one breach, and the plaintiff could not split up his cause of action, recovering a part of his damages in one suit and the remainder afterwards in other suits, for that single breach." A right of action arose, not for unearned wages or salary as such, but for damages for the breach of the contract.

> We hold, therefore, that when the contract in question was broken, the employés cause of action was not for salary, but one for damages growing out of the breach of the contract, which was, as seen, an entire one.

> In ascertaining these damages, they will be viewed as being aggregate for the entire term, for the purposes of the complaining employé; and, by virtue of the same principle, any right to deduction, by way of mitigation of damages, arising at any time during the year in behalf of the employer, must be taken into reckoning. Otherwise the employé as plaintiff would be permitted to elect to segregate and include for remedial purposes that part of the year during or in

respect of which no factor of mitigation arose, and exclude a subsequent portion of the period in which such counterright did arise.

It is, of course, the rule that whatever the employé has, during the term, in fact received as compensation under a contract with another employer, after dismissal, must be deducted. Children of Israel v. Peres, 2 Cold. 620; Allen v. Maronne, 93 Tenn. 161, 23 S. W. 113; 1 Labatt, M. & S. (2d Ed.)§ 390.

## Stone v. Halsell, 648 S.W.2d 949 (Tenn. Ct. App. 1982)

In this case a circuit court clerk was suing to recover unpaid salaries. Although the determination of the case turned on statutes relative to clerks' salaries, the court did find that the clerk was entitled to recover for unpaid salary for a period of six years preceding the filing of the suit.

## Greene v. THGC, Inc., 915 S.W.2d 809 (Tenn. Ct. App. 1995)

This is a suit wherein the plaintiff had been granted a complimentary lifetime membership as a result of an assignment of beneficial interest in real estate to THGC's predecessor in title.

The determinative question in the case is when the statute of limitations began to run. This Court held that the contract was entire and the statute began to run upon the plaintiff being advised that his complimentary membership would not be honored. In reaching this conclusion the Court stated the following (at page 811):

Tennessee Code Annotated section 28-3-109(a)(3) (1980) provides that the statute will begin to run when "the cause of action accrued." The trial court held that the cause of action did not accrue until plaintiff incurred damages. We are of the opinion that the trial court was in error since the construction of the contract shows that plaintiff did not enjoy a separate cause of action upon each dues payment, but rather he had a single cause of action which accrued upon defendant's repudiation of the contract in 1985.

"Where a contract is severable or divisible, breaches of its severable parts will give rise to separate causes of action accruing at different times, ..." Brockett v. Pipkin, 25 Tenn.App. 1, 8, 149 S.W.2d 478, 482 (1941) (quoting 37 C.J. *Limitations of Actions* § 216 (1925)). Under these circumstances, the statute of limitation will begin to run at the time of each breach. *Id*. On the other hand, "if a continuing contract is entire, an action can be maintained on it only when a breach occurs or the contract is in some way terminated, and the statute begins to run from that time only." 54 C.J.S. *Limitations of Actions*, § 154 (1987).

Under Tennessee law there is no precise definition of when a contract is entire or when it is severable. *James Cable Partners, L.P. v. City of Jamestown*, 818 S.W.2d 338, 344 (Tenn.App.1991), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992). A contract is severable "where each part is so independent of each other as to form a separate contract." *Id*. A contract is entire when the "promises of both parties are interdependent and relate to the same subject matter." *Id*.

Although the quotations for the opinions above set out are to some degree contradictory, we are persuaded that the contract with the Plaintiffs, which did not provide for a specific amount to be paid, as was the case in <u>Menihan</u>, was not entire, but severable. We accordingly affirm the Trial Court's determination to that effect.

As to the issue of estoppel, the burden of proof is upon the party asserting such, <u>Edwards v. Central Motor Company</u>, 277 S.W.2d 417 (Tenn. 1955), and counsel for the Plaintiffs in their trial brief correctly states the elements thereof:

> "In order to constitute an equitable estoppel, estoppel by conduct, or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice."

> [<u>Ryan v. Lumbermen's Mutual Cas. Co.</u>, 485 S.W.2d 548, 550 (Tenn.1972) (<u>citing</u> 31 C.J.S. Estoppel § 67 at 402)].

We agree with the Trial Judge that under the facts developed the Plaintiffs were not entitled to a directed verdict as to this issue. Moreover, it does not appear this issue was submitted to the jury as the special verdict form makes no mention thereof.

Regarding waiver, counsel for Summers Hardware in its trial brief also correctly states this doctrine:

> "A waiver is an intentional relinquishment of a known right and is a doctrine of very broad and general application. It concedes a right, but assumes a voluntary relinquishment of it. Our courts have held that there must be clear, unequivocal and decisive acts of the party of an act which shows determination not to have the benefit intended in order to constitute a waiver."

(Gitter v. Tennessee Farmers Mut. Ins. Co., 450 S.W.2d 780, 784 (Tenn. Ct. App. 1969)).

Certainly under the proof in this case, given the fact that representatives of Summers Hardware misled the Plaintiffs relative to the deduction from their checks and concealed from them the true facts, there is material evidence to support the jury's verdict relative to this issue.

With regard to the Court increasing the judgment, it appears that after the jury verdict was rendered in favor of the Plaintiffs, a simple mathematical computation would determine the amount of damages. Indeed, in the case of Spence v. Allstate Ins. Co., 883 S.W.2d 586 (Tenn. 1994), our Supreme Court addressed the precise question where the amount to which the plaintiff was entitled was uncontested. In approving the trial court's altering and amending the judgment to that figure, the Supreme Court stated the following (at page 594):

> The next issue for our determination is whether the Court of Appeals erred in affirming the trial court's grant of Allstate's motion for "additur." This ruling increased the judgment against Pamela Spence from $4,990 to $88,777. (FN3)
>
> Pamela Spence argues that the trial court erred because it failed to obtain her consent before ordering the additur. This, she says, violated her right to jury trial as guaranteed by the Seventh Amendment to the United States Constitution and Article I, § 6 of the Tennessee Constitution.
>
> Pamela Spence is correct that the federal and state constitutions require the consent of the party against whom the additur is to be entered. *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935); *McCall v. Waer*, 487 S.W.2d 308, 310 (Tenn.1972); *Kaiser v. Cannon*, 529 S.W.2d 235 (Tenn.App.1975). The rationale for requiring such consent is that when the trial court grants a motion for an additur, it is essentially disagreeing with the jury's determination of damages--which is a question of fact. Because the trial court is acting in its capacity as "thirteenth juror," the right to jury trial clauses of the federal and state constitutions--which require that the jury be allowed to determine all disputed issues of fact, *Finks v. Gillum*, 38 Tenn.App. 304, 273 S.W.2d 722 (1954); *Morgan v. Tennessee Central Ry.*, 31 Tenn.App. 409, 216 S.W.2d 32 (1948)--mandate that the trial court obtain the consent of the party against whom the additur is to be entered. And if that party does not accept the additur, the trial court must order a new trial. Tenn. Code Ann. § 20-10-101(a)(2).
>
> That rationale does not apply to this case because Allstate's motion to increase the judgment, although denominated as a motion for "additur," was in fact a motion to alter or amend the judgment pursuant to Rule 59.04, Tenn.R.Civ.P. This is so because Allstate's damages on its indemnity claim against Pamela Spence were undisputed--the only issue of fact for the jury to

decide on the indemnity claim was whether Pamela Spence was responsible for the fire. If the jury did decide that she was responsible for the fire, it was required to award Allstate the total amount it had expended on the claim.

. . . .

Because there was no factual issue concerning damages, the trial court was not acting as "thirteenth juror" in increasing the judgment to the amount that Allstate had expended due to Pamela Spence's acts. It is, moreover, well settled that a trial court may modify a judgment when the damages awarded by the jury conflict with the undisputed facts concerning damages. *See Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466 (Mo.App.1986) (judgment against insurer modified when it exceeded the applicable limits of the insurance policy); *Dixie Ins. Co. v. Federick*, 449 So.2d 972 (Fla.App.1984) (same). Therefore, the holding of the Court of Appeals on this issue is affirmed. (FN4)[3]

We also observe as to this point that had the trial been bifurcated and the jury first asked to determine the terms of the contracts of employment and reported as it did in favor of the Plaintiffs, the Trial Court would have been justified in directing a verdict as to the amount of damages sustained.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of the judgments and costs below. Costs of appeal are adjudged against Summers Hardware and Supply Company and its surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE

_____

[3] The footnotes in the quoted material have been omitted.