IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 24, 2015 Session


**MARK A. COHEN v. RICHARD A. DEMONBREUN**


**Appeal from the Circuit Court for Davidson County**
**No. 13C4965     Carol Soloman, Judge**

_____


**No. M2014-02403-COA-R3-CV – Filed September 30, 2015**

_____


This appeal arises from the dismissal of suit for unpaid fees. An expert and an attorney entered into a services agreement in March 2005. The expert first invoiced for his services in January 2006. Additional services were rendered after that date, and the expert sent additional invoices. Despite repeated requests from the expert and promises from the attorney, invoices went unpaid except for a small partial payment. On September 19, 2013, the expert filed suit against the attorney in general sessions court and obtained a default judgment. Attorney then appealed to circuit court. On a motion for summary judgment, the trial court found that suit was barred by the applicable statute of limitations. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

James C. Edwards, Madison, Tennessee, for the appellant, Mark A. Cohen.

No brief filed on behalf of the appellee, Richard A. Demonbreun.

# OPINION

## I. Factual Background[1]

In March 2005, Mark A. Cohen entered into a written agreement with an attorney, Richard A. Demonbreun, to provide services as an expert in connection with a medical malpractice case. The agreement contained the following provisions relating to compensation:

> 1. Attorney hereby retains Dr. Cohen to research, prepare a written or oral report, and, if necessary, testify concerning his findings at the agreed upon hourly rate of $425 per hour plus any actual expenses incurred. Dr. Cohen agrees not to charge more than $3,500 without prior approval.

> 2. In addition to the above fees, Attorney agrees to pay Dr. Cohen at the rate of $425 per hour (including travel time), plus expenses for time spent testifying at either depositions or trials in this case. Attorney agrees to be fully responsible for all such charges—even if the opposing counsel requests the deposition. Although Dr. Cohen may bill opposing counsel directly as a courtesy, a copy of the bill and any late payment notices may be sent to Attorney, and will be Attorney's ultimate responsibility.

> 3. Attorney agrees to pay Dr. Cohen a non-refundable fee of $1,500 to retain him for such services. Dr. Cohen will bill against this retainer based on his hourly rates and expenses as described herein.

> . . . .

> 5. Attorney agrees to render payment to Dr. Cohen within 30 days of receipt of the statement requesting such payment. Attorney further agrees to pay interest at the rate of 1.5% per month on any delinquent accounts. This agreement is between the Attorney and Dr. Cohen, and failure by Attorney's client and/or opposing counsel to reimburse the Attorney shall not be deemed grounds for late payment to Dr. Cohen.

As contemplated by the agreement, Dr. Cohen sent Mr. Demonbreun invoices for his services. Along with a cover letter dated January 25, 2006, Dr. Cohen sent an invoice to

---

[1] The facts are drawn from the pleadings, the exhibits filed in support of the motion for summary judgment, and the exhibits to the affidavit of Mark A. Cohen.

2

Mr. Demonbreun for $3,825.00. After deduction of the $1,500 retainer, the invoice showed a balance due of $2,325.00. Consistent with the parties' agreement, the January 2006 invoice contained the following legend: "Terms: Net 30 days. Accounts over 30 days will be subject to interest at the rate of 1.5% per month beginning with date of original bill." The legend with the "net thirty" payment terms appeared on each subsequent invoice.

Mr. Demonbreun apparently failed to pay the January 2006 invoice,[2] which prompted an e-mail from Dr. Cohen. On November 1, 2006, Mr. Demonbreun responded by e-mail with reassurances and promises of future work and payments:

> Mark: I am glad you have emailed me. The case is set for trial the week of Sept. 17, 2007. It is likely that the [attorney for the defendant] will want to take your discovery deposition in the next couple of months. Of course, she will pay for your time on that. I have been going through a very difficult cash problem here and feel very badly that this amount is outstanding. . . . .
>
> I appreciate your offer to try and work something out here. Let me see if I can get a $500 check written in the next week and begin to get some payment on this. The discovery deposition will help this matter generate some income for you, and I greatly appreciate all you have do [sic] so far. It is likely the case will settle sometime in the Spring.

The check for $500 never came, but Mr. Demonbreun made additional promises of payment.

In February 2007, after further prodding, Mr. Demonbreun sent another e-mail to Dr. Cohen. This time Mr. Demonbreun went into further detail on the financial strain he was under, but he nonetheless promised a partial payment.

> Mark: I received your email and am embarrassed that I have not been able to send a check. The costs of carrying this case have been more than my little law office can handle: this past month is [sic] cost $4000 just to have the medical records duplicated in order for the two doctors and the physician's [sic] assistant I have needed to retain to be able to have everything from which to testify. I know this does not excuse my failing to send a check. It just seems I cannot get caught up. I have talked with Mark and he cannot help me

---

[2] Subsequent invoices make reference to an outstanding invoice dated April 4, 2006, also in the amount of $2,325.00. The April 2006 invoice is not included in the record. We cannot determine whether the April 2006 invoice was a repeat of the January 2006 invoice or included only services rendered after January 2006 that coincidentally totaled the same amount as the January 2006 invoice.

3

cover any expenses right [sic]. I will mail a check for $250 on Friday and will find this amount by then.

In his reply, Dr. Cohen seemed agreeable to partial payments but stressed that he must be paid in full prior to trial. He also noted that defense counsel might discover that he was unpaid. Ultimately, Mr. Demonbreun sent Dr. Cohen a payment of $300.

The repeated requests for payment and the concern that the defense would inquire about the lack of payment to his experts led Mr. Demonbreun to file a motion in limine on August 27, 2007. The motion in limine requested that the court "prohibit the defendants from presenting any testimony, making comments or offering into evidence proof of any kind of communication" regarding fee agreements with his experts. The motion admitted that the experts had not been paid and made the following reference to an agreement with the experts to make payment at a later date:

> That counsel for the [plaintiff], due to his limited financial resources for trial preparation on this case, has reached an agreement with his expert witnesses that they will be paid at a future date, which may be before or after this matter is resolved either through trial or settlement, and that the counsel for the defendants has asked questions during depositions about these necessary fee arrangements in an attempt to discredit the validity of their testimony. The expert witnesses involved in this proceeding for the plaintiff have agreed to testify based upon their concerns about the severe breach of the standard of care that occurred which resulted in the death of a young woman at the age of only 27 years of age [sic]. Any reference to the willingness of these witnesses to be paid at a later date is irrelevant, prejudicial and has no probative value to the issues involved in this lawsuit and should not be permitted before the jury for any reason.

Later that same day, Dr. Cohen sent Mr. Demonbreun an e-mail, referencing an attached agreement, asking him to acknowledge both the outstanding balance due and that payment was not contingent upon the outcome of trial. Apparently unaware of the motion in limine, Dr. Cohen also again raised the specter of opposing counsel learning that Mr. Demonbreun was "behind on payments to experts."

Mr. Demonbreun responded the next day. Besides informing Dr. Cohen of the motion in limine, Mr. Demonbreun offered new hope for payment:

> Mark: I have filed a Motion in Limine to take care of any concerns you have here. The jury will not be permitted to hear any comments by [defense

4

counsel] relative to your fee being outstanding or anything to do with payment. You may be asked about what you have charged which is entirely appropriate, but I have anticipated this issue and went ahead and filed a motion so [defense counsel] would not attempt to make an issue out of the fact that her firm has a much deeper pocket than I do.

I am hopeful also that my home sale is finalized very soon and when that loan closes I will be paid over $600,000 in equity proceeds from which I plan to pay you immediately. But with the mortgage crisis there may be [sic] delay [sic] getting that done. Let me know if you still need us [sic] to execute this Agreement based on the motion and the fact your fee payment will not be mentioned in court.

The record does not reveal how Dr. Cohen responded.

The trial, which commenced on September 17, 2007, ended in a mistrial. *Watkins v. Affiliated Internists, P.C.*, No. M2008-01205-COA-R3-CV, 2009 WL 5173716, at *6, *8 (Tenn. Ct. App. Dec. 29, 2009). Shortly after the mistrial was declared, in a letter dated September 21, 2007, Dr. Cohen sent a new invoice to Mr. Demonbreun that included, not only the previous balance and accrued interest, but also new charges for services rendered from July through September 2007 and expenses. The charges for new services totaled $6,808.33, and the expenses totaled $226.15.

After sending another invoice in April 2008 showing accrued interest on the balance due, Dr. Cohen received the following e-mail from Mr. Demonbreun:

Mark: I have been forced to file for Chapter 11 protection due to my home sale not closing. We were in court last week and are expecting to get the case re-set for trial in the near future. I apologize for the delay and will do everything possible to resume payments to you as soon as possible.

The case never went to trial again. The trial court dismissed the case on a motion for summary judgment. We affirmed the dismissal on appeal. *Watkins v. Affiliated Internists, P.C.*, No. M2011-00541-COA-R3-CV, 2012 WL 4086139 (Tenn. Ct. App. Sept. 17, 2012).

## II. PROCEDURAL HISTORY

On September 19, 2013, Dr. Cohen filed a warrant in the Metropolitan General Sessions Court for Davidson County, Tennessee, against Mr. Demonbreun for his outstanding fees plus attorneys' fees and expenses. The general sessions court entered a

default judgment in the amount of $19,781.33. Mr. Demonbreun appealed the judgment to circuit court.

Before the Circuit Court for Davidson County, Tennessee, Mr. Demonbreun, representing himself, moved for summary judgment. As grounds for his motion, Mr. Demonbreun stated "plaintiff and defendant executed a contract on March 30, 2005, and suit was filed in an effort to collect monies allegedly owed on that contract September 19, 2013, more than eight (8) years later." In response, citing Mr. Demonbreun's promises of payment, Dr. Cohen argued that the doctrine of equitable estoppel tolled the running of the statute of limitations.

The trial court granted the motion for summary judgment. The court's order made no reference to the separate invoices for services. Instead, the court noted that the parties' agreement had been executed on March 30, 2005, and that the "cause of action to collect monies allegedly due on the [agreement] had not been filed in the Davidson County General Sessions Court until [a date], well outside the six (6) year limitations period." The order also did not specifically reference the estoppel defense. Instead, focusing solely on the e-mail in which Mr. Demonbreun advised of his bankruptcy filing, the court stated "this communication . . . does not provide sufficient evidence of a promise to pay the alleged debt which would extend the limitations period to include the filing date . . . ."

### III. ANALYSIS

### A. STANDARD OF REVIEW

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). The court is not to "weigh" the evidence when evaluating a motion for summary judgment or substitute its judgment for that of the trier of fact. *Martin*, 271 S.W.3d at 87; *Byrd*, 847 S.W.2d at 211. Instead, the court is to "take the strongest legitimate view of the evidence in favor of the nonmoving party." *Id.* at 210. When considering a motion for summary judgment, courts grant "all reasonable inferences in favor of [the nonmoving party] and discard all countervailing evidence." *Id.* at 210-11.

Defenses based on statutes of limitations are particularly well suited to summary judgment motions because the facts material to the defense are often undisputed. *Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000). The statute of limitations is an

affirmative defense. Tenn. R. Civ. P. 8.03. As such, a party asserting a claim is barred by the statute of limitations has the burden of establishing all of its elements. *Carr v. Borchers*, 815 S.W.2d 528, 532 (Tenn. Ct. App. 1991).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin*, 271 S.W.3d at 84; *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

## B. STATUTE OF LIMITATIONS

The trial court granted summary judgment solely on the statute of limitations. A statute of limitations defense "triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012). With respect to the first component, the gravamen of Dr. Cohen's action is breach of contract. *See Mid-S. Indus., Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19, 29 (Tenn. Ct. App. 2010) (applicable statute of limitations determined by the gravamen of the action). Consequently, the length of the limitation period is six years from the date the cause of action accrues. Tenn. Code Ann. § 28-3-109(a)(3) (2000).

In a breach of contract case, the cause of action accrues on the date of breach. *Greene v. THGC, Inc.*, 915 S.W.2d 809, 810 (Tenn. Ct. App. 1995). We have described the date of breach as the date "when a contracting party first knows or should know that the contract will not be performed." *Wilkins v. Third Nat. Bank in Nashville*, 884 S.W.2d 758, 762 (Tenn. Ct. App. 1994). We have also recognized that, with some contracts, there can be more than one breach and each breach can accrue at different times. *Collins v. Summers Hardware and Supply Co.*, 88 S.W.3d 192, 201 (Tenn. Ct. App. 2002). We describe such contracts as severable. *Id.* at 197. For example, with an installment note, "the cause of action accrues on each installment when it becomes due and the Statute begins to run from that moment on that installment." *Farmers & Merchants Bank v. Templeton*, 646 S.W.2d 920, 923 (Tenn. Ct. App. 1982). As a result, "suit may be brought in successive actions upon each default in an installment for the amount of the default installment." *Id.*

We conclude the contract at issue here is severable, such that Mr. Demonbreun could commit more than one breach. *See Collins*, 88 S.W.3d at 201 (employment contract providing for payment of commissions was severable). In light of this determination, we

7

must determine when breaches occurred and a cause or causes of action accrued. Here, the parties' agreement conditions Mr. Demonbreun's liability on the receipt of an invoice.[3] Therefore, a breach occurred and a cause of action accrued on the 31st day following the receipt of an invoice for services and non-payment. *See Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 837 (Tenn. Ct. App. 1980) (No liability arises under a contract "until such time as the condition precedent was fulfilled.").

Dr. Cohen filed suit within six years on only one of the two breaches. A breach occurred and the cause of action accrued for those services first invoiced on January 25, 2006, sometime in late February 2006, assuming receipt of the invoice within a few days of January 25. For those additional services and expense first invoiced on September 27, 2007, the breach occurred and the cause of action accrued in late September or early October 2007, again depending upon receipt of the invoice.

Having determined that suit was filed beyond six years for one of the two breaches for which plaintiff sought recovery, we consider the "applicability of any relevant tolling doctrines." *Redwing*, 363 S.W.3d at 456. In response to the motion for summary judgment, Dr. Cohen relied upon the doctrine of equitable estoppel. The doctrine "tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Id.* at 460. As the party invoking the doctrine, Dr. Cohen had the burden of proving its applicability. *Id.*

To establish the applicability of the doctrine of equitable estoppel, a plaintiff must prove two elements. First, the plaintiff must prove "that the defendant induced him or her to put off filing suit by identifying specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the defendant that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit." *Id.* Second, the plaintiff must prove that the "'delay in filing suit was not attributable to [his or her] own lack of diligence.'" *Id.* (quoting *Hardcastle v. Harris*, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)).

Taking "the strongest legitimate view of the evidence in favor of the nonmoving party," *Byrd*, 847 S.W.2d at 210, Dr. Cohen demonstrated both elements necessary for the application of the doctrine of equitable estoppel. Dr. Cohen has shown promises to pay his claim within the applicable statute of limitations upon which he apparently relied.

---

[3] Where the claim is for a sum of money allegedly owed pursuant to a contract, a cause of action does not always accrue on demand. *See, e.g.*, Tenn. Code Ann. § 28-3-109(c); *Hamilton Nat'l Bank v. McCanless*, 144 S.W.2d 768, 769 (Tenn. 1940) (cause of action on a demand note accrues on the date of execution of the note).

8

Where by promises or appearances one party is induced to believe that the other party is going to pay a claim or otherwise satisfy the claims of the first party, and in reliance on that representation the first party delays filing suit within the applicable statute of limitations, the party making the representations may be estopped to raise the statute of limitations as a defense.

*Sparks v. Metro. Gov't of Nashville & Davidson Cnty.*, 771 S.W.2d 430, 433 (Tenn. Ct. App. 1989). Dr. Cohen also appears to have acted diligently by filing suit just over one year after our decision affirming the dismissal of the wrongful death action for which he was hired as an expert. *Watkins*, 2012 WL 4086139, at *1. As noted above, the motion in limine filed by Mr. Demonbreun represented that he had agreed to pay experts possibly as late as the resolution of the case.

Because of the limited record before us, we cannot make a conclusive determination that the doctrine of equitable estoppel applies. As noted above, many of the "facts" are drawn from exhibits to the affidavit of Dr. Cohen, which Mr. Demonbreun has not had the opportunity to challenge and the trier of fact has not scrutinized. We can conclude, however, that there is a genuine issue for trial, and therefore, summary judgment was not appropriate. *See* Tenn. R. Civ. P. 56.06.

### III. CONCLUSION

We conclude that suit was filed within six years of one of the alleged breaches of the parties' agreement. We also conclude that disputed issues of material fact exist as to whether the doctrine of equitable estoppel tolls the applicable statute of limitations. Therefore, we reverse the judgment of dismissal and remand with instructions to deny the motion for summary judgment.

_____
W. NEAL McBRAYER, JUDGE

9