[Civ. No. 57976. Second Dist., Div. One. Apr. 28, 1980.]

JANET ADAMS CONWAY, Plaintiff and Respondent, v. BUGHOUSE, INC., et al., Defendants and Appellants.

---

COUNSEL

E. W. Sheridan for Defendants and Appellants.

Milton J. Nenney and Mark E. Mahler for Plaintiff and Respondent.

---

OPINION

**MARSHALL, J.***—This appeal is from a judgment in which respondent was awarded installment payments owed to her following appellants' contract breach.

### FACTS

Defendant and appellant Dan Budnick, and plaintiff's assignor, Dalton Adams each formerly owned half of defendant Bughouse, Inc., a company which imported and sold novelty items made in the Orient. On May 13, 1970, Adams and Budnick entered into a written agreement whereby Adams transferred his ownership interest in Bughouse, Inc. to Budnick. He in turn agreed to pay Adams $40,000 (which sum was borrowed by Budnick from a bank and the loan guaranteed by Adams) in cash immediately, $1,000 per month to Adams for the rest of his life, and $500 per month to Adams' wife, plaintiff Conway, should she survive Adams. Adams also agreed to refrain from engaging in any business competitive with Bughouse, Inc., and to make trips to the Orient at Budnick's request. Budnick personally guaranteed the payments to Adams.

In June 1971, defendants stopped making payments to Adams. Defendants contend that as of that date, Adams was no longer meeting his obligations under the contract. In particular, they claim that he was harming Bughouse, Inc. by discouraging Oriental suppliers from doing business with Bughouse, Inc. and by failing to place orders with Oriental suppliers.

---

*Assigned by the Chairperson of the Judicial Council.

In June 1972, Adams and his wife, Conway, entered into a marital property settlement which provided that they would divide equally the payments owed by defendants under the contract. On June 18, 1976, Adams assigned his remaining interest to Conway. Both Adams and Conway are living at the present time.

On June 24, 1976, Conway sued defendants for the installment payments due under the contract. Defendants asserted as affirmative defenses Adams' breach of the covenant not to compete and the statute of limitations under section 337 of the Code of Civil Procedure.

On August 16, 1977, Judge Rittenband granted a partial summary judgment in Conway's favor. Specifically, he found that the agreement was an installment contract, and that since the statute of limitations would begin to run only from the date of payment of each installment, Conway was entitled to recover the monthly payments due within four years of the commencement of the action. The remaining issues were reserved for trial.

At the trial, concluded November 17, 1978, Judge Robert A. Wenke found, inter alia, that Adams had not engaged in competition with defendants, and that Conway was owed all payments due from July 5, 1972. Judgment was entered for Conway in the amount of $98,001.77.

## DISCUSSION

### I

The validity of the covenant not to compete is in question inasmuch as no limitation of county or city was specified in the contract as prescribed in sections 16601 and 16602 of the Business and Professions Code. (*Swenson* v. *File* (1970) 3 Cal.3d 389, 395 [90 Cal.Rptr. 580, 475 P.2d 852].) ■ However, putting aside the questionable character of the covenant[1] we do not find the requisite evidence of substantial competition. (*Swenson* v. *File, supra,* 3 Cal.3d 389, 395; see *Monogram Industries, Inc.* v. *Sar Industries, Inc.* (1976) 64 Cal.App.3d 692, 702 [134 Cal.Rptr. 714].) In fact, we find substantial evidence of no competition. Despite the alleged competition, we also note that the gross sales of Bughouse, Inc. increased from $283,000 in 1970 to $321,000 in 1972.

---

[1]Even were the no competition clause invalid, the balance of the contract is not thereby rendered void. Furthermore, the issue is deemed foreclosed by the summary judgment.

## II

Defendants challenge the findings made by the court below, that Adams did not breach the covenant not to compete. While Adams' behavior following the date of the agreement may in part have been puzzling[2]—he might not have been very cooperative—defendants have not shown that Adams actually engaged in any competition with Bughouse. Defendants admit that Adams neither started his own business nor helped a competitor.

There is certainly evidence in the record that some of Adams' actions may have been less than helpful to Bughouse. However, such actions do not justify the conclusion that Adams competed with Bughouse. Such conclusion becomes even more unlikely, as Judge Wenke points out, when one considers that such acts by Adams would deliberately injure and might destroy the very enterprise which was to make substantial monthly payments to him for the rest of his life. That he should seek its destruction makes no apparent sense. If defendants seek by such evidence to establish that Adams intended to destroy Bughouse so that Adams could then take over, he has not succeeded in proving such intent.

Furthermore, Adams had guaranteed a loan of $40,000 by a bank to Budnick. The latter paid the sum to Adams. If Adams injured Bughouse, Budnick would not derive enough income from Bughouse to pay the bank and Adams would be required to make good his guarantee. Again, for Adams to compete with Bughouse would make no economic sense.

■ Although there is conflicting evidence in a case, as long as a substantial evidentiary quantum supports the judgment it will not be overturned. (*Watson* v. *County of Merced* (1969) 274 Cal.App.2d 263, 268 [78 Cal.Rptr. 807].) Defendants have not demonstrated that substantial evidence does not support the trial court's finding. We also concur with that court's minute order discussion of the evidence: "This Court further finds that the defendants have not sustained their burden of proof with respect to proving that plaintiff's assignor breached said covenant. The evidence in regard to Bugs Unlimited and Bugs, etc., is at least as consistent with plaintiff's contention that these names were

---

[2]For example, his notation on an order "Do not sell to Bughouse." He testified that he believed they were considering a change of name from Bughouse to Bugs, etc. In any case, the merchandise went to Bughouse.

used solely in an attempt to cope with the Bughouse's supplier problems as it is with defendants' contentions. The Court notes that much of this activity preceded the sale, the same address was used, and evidence of a sales organization for Bugs Unlimited and Bugs, etc., was lacking. The cancellation of Letter of Credit No. 33,284 does not warrant a contrary inference. Further, assuming there had been a breach, evidence as to damages was insufficient."

## III

Having decided that there is substantial evidence that Adams did not breach the covenant to compete, defendants' theories concerning their statute of limitations defenses fail also.

Defendants contend that Adams' breach was followed by their own repudiation of the contract, thereby resulting in its termination as of 1971. (See *Fox* v. *Dehn* (1974), 42 Cal.App.3d 165, 172 [116 Cal.Rptr. 786].) Alternatively, they contend that Adams failed to satisfy the condition precedent to receiving the installments, that is, he did not observe the noncompetition covenant, again resulting in the termination of the contract. As we accept the lower court's finding that there was no breach by Adams, these theories barring recovery become untenable.

Finally, defendants contend that the contract was not an installment contract but instead a completed agreement, with payments to be made over a period of time. They argue that the acts required under the contract were indivisible, continuous, and inseparable, and, therefore, the initial breach resulted in a breach of the total agreement. A review of the contract requires us to negate such argument. The terms of the contract support the finding of the trial court that the agreement is an installment contract. The payments were to be made for the rest of Adams' life and then to Conway if she survives Adams, for the remainder of her life. All this is subject to the no competition condition.

Thus, the total amount of money to be paid to Conway is not a fixed sum which is to be paid out over a period of time. To the contrary, the total amount owed is unascertainable until the date of Conway's death because each payment is separate and contingent upon the fact that Adams, and Conway after the death of Adams, survive, and Adams does not compete. As each payment is separable from the others and is not a part of a total payment, the agreement should logically be consid-

ered an installment contract for purposes of determination of the application of the statute of limitations.

It would appear that Adams was, in effect, pensioned off to remove him from the business and from competition. In an earlier case, the Supreme Court held that "the right to receive periodic payments under a pension is a continuing one [citation omitted], and any time limitation upon the right to sue for each installment necessarily commences to run from the time when that installment actually falls due." (*Dillon v. Board of Pension Commrs.* (1941) 18 Cal.2d 427, 430 [116 P.2d 37, 136 A.L.R. 800].) The type of pension payments made in that case were similar to the payments to be made to Adams for the rest of his life.

Even where a specific amount of money is due to be paid out over a period of time, "the statute of limitations begins to run against the cause of action for the recovery of an unpaid installment *at the time it is payable.*" (*Bank of America* v. *McLaughlin* (1957) 152 Cal.App.2d Supp. 911, 915 [313 P.2d 220], italics added; see *Lee* v. *DeForest* (1937) 22 Cal.App.2d 351, 358 [71 P.2d 285], 43 Cal.Jur.3d, Limitation of Actions, § 46.) In *Bank of America* v. *McLaughlin*, recovery for payments on a promissory note was granted for the last two years. The initial instance of nonpayment had occurred prior to that but was barred by the applicable (two year) statute of limitations.

The present contract easily rests within the parameters required by law for an installment contract. Indeed, logic would dictate that each obligation owed to Conway be separate, as the total amount cannot be ascertained until respondent's death. Engagement in competition would foreclose the receipt of installments from date of commencement of such competition. Even though the agreement was not designated as such, the method of payment is certainly that employed in an installment contract. Accordingly, the rules of an installment contract should be applied and the statute of limitations should then run from the date of each installment.

## IV

Defendants' remaining contentions address the question of whether the partial summary judgment order entered by the first trial court is binding on the second trial court.

In the first proceeding, Judge Laurence J. Rittenband heard all parties' motions for summary judgment. Judge Rittenband granted Conway a partial summary judgment, finding that the contract involved was an installment contract and that payments due under the contract for the preceding four years, (the applicable statute of limitations being for such period) were payable to Conway. The remaining issues were reserved for trial.

The case then proceeded to trial before Judge Wenke. That judge honored the partial summary judgment of Judge Rittenband and decided the remaining questions presented. Defendants argued to Judge Wenke, and here as well, that the partial summary judgment was not binding on Judge Wenke and that he, Judge Wenke, should have reexamined the question of whether the contract was an installment contract.

As this court has also concluded that the agreement was indeed an installment contract, it agrees with Judge Rittenband. There remains only the inquiry whether Judge Wenke should have afforded appellant an opportunity to reargue the matter and if he was so inclined, to set aside the order of Judge Rittenband. Defendants admit that there is no conclusive California authority on this point. They cite *Trani* v. *R. G. Hohman Enterprises, Inc.* (1975) 52 Cal.App.3d 314 [125 Cal.Rptr. 34])[3] for the proposition that a partial summary judgment remains interlocutory while the proceedings are pending and, that being the nature of such judgment, it is not binding. However, the court in *Trani* goes on to say that such an order of the trial court cannot be appealed and that the only remedy at that time would be a petition for a writ of mandate. (*Id.*, at p. 316.) The appellants not having availed themselves of such remedy, the order would appear to have achieved finality.

Defendants urge us to follow the holding of the Ninth Circuit in *Castner* v. *First National Bank of Anchorage* (9th Cir. 1960) 278 F.2d 376. That court allowed a second trial judge to overrule a previous trial judge after the former became firmly convinced that the latter had made an error of law. The court held that: "Under such circumstances, we feel that there is no abuse of discretion in overruling the prior judge. The second judge must conscientiously carry out his judicial function in a case over which he is presiding. He is not doing this if he permits

---

[3]Another California case relied upon by defendants, *Jacuzzi* v. *Jacuzzi Bros., Inc.* (1966) 243 Cal.App.2d 1 [52 Cal.Rptr. 147], is inapplicable. In *Jacuzzi*, a summary judgment was being challenged, and the motion for a new trial was made before the same judge who granted the summary judgment.

what he believes to be a *prior erroneous ruling* to control the case. He can settle the questions presently without compelling the parties to proceed with what may be a futile and expensive trial. We think that these are *cogent reasons and exceptional circumstances* which justify a departure from the rule of comity within the permissible limits of judicial discretion." (Italics added.) (*Id.* at p. 380.)

A later Ninth Circuit decision appears to limit a judge's discretion to overrule a prior judge's partial summary judgment. The court in *United States* v. *Desert Gold Mining Company* (9th Cir. 1970) 433 F.2d 713 stated that "one judge should not overrule another except for the most cogent reasons." In that case, the first judge died after granting a partial summary judgment. The second judge therefore was considered to have a sufficiently "cogent" reason to overrule the first judge in his ultimate disposition of the case. He has no such cogent reason in the instant case.

Furthermore, the factual basis for the federal position does not exist here. In the instant case, this court has concluded that the decision of Judge Rittenband was not erroneous. Hence, Judge Wenke should not have been moved to overrule Judge Rittenband because of the latter's alleged error of law.

Moreover, this court must look to the reasons and policies behind the summary judgment rules in reaching its decision. As noted by Judge Wenke during the trial, the entire purpose of the partial summary judgment rule would be thwarted if we were to rule in appellant's favor. The purpose of a partial summary judgment is to dispose of one or more issues before trial so that the parties may focus on the questions remaining. Section 437c of the Code of Civil Procedure states that if the court specifies that "such issues are without substantial controversy," then *at the trial*, "the issue so specified shall be *deemed established* and *the action shall proceed as to the issues remaining.*" (Italics added.) Surely this language does not anticipate relitigation of issues which have already been established. Indeed, if that were the case, motions for partial summary judgment would be exercises in futility as attorneys would face the prospect of endlessly rearguing an issue which they had already exhaustively addressed in their motions for summary judgment.

■ Section 437c of the Code of Civil Procedure, requires that the trial judge "shall proceed as to the issues remaining." This is manda-

tory; the statute does not permit a judge subsequently assigned to the matter to review issues already determined in earlier summary judgment proceedings. What matters have been decided on the motion for summary judgment certainly are not "issues remaining."

It also must be observed that the language of the Federal Rules of Civil Procedure (rule 56(d)) does not direct the federal trial judge to "proceed as to the issues remaining." He is therefore afforded a different range of discretion than that permitted the state judge.

In any case, there is an adequate remedy for the party who feels that an injustice has been done by the granting of a partial summary judgment. As noted in the *Trani* decision, a party may petition for a writ of mandate when the summary judgment decision is rendered. This the defendants failed to do.

## DECISION

The denial of reconsideration of the partial summary judgment order is affirmed. Judgment for respondent is affirmed. Neither party debates the commissions found to be due (findings 7 & 8, conclusion 7) in the amount of $1,836.90 to respondent on sales to Nystrom.

The judgment is affirmed.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.