FARMERS & MERCHANTS BANK, Plaintiff-Appellee,

v.

Fred TEMPLETON, Defendant-Third Party Plaintiff-Appellant,

v.

Jimmy Joe FREEMAN, Third-Party Defendant-Appellee.

Court of Appeals of Tennessee, Western Section.

Oct. 22, 1982.

Application for Permission to Appeal Denied by Supreme Court Feb. 22, 1983.

W.J. Reynolds, Selmer, for defendant-third party plaintiff-appellant.

Joe Hailey, Selmer, for plaintiff-appellee.

Terry Abernathy, Selmer, for third-party defendant-appellee.

NEARN, Judge.

Plaintiff, Farmers and Merchants Bank, brought suit in the Chancery Court of McNairy County against Fred Templeton for the balance due on a promissory note payable in installments. Templeton denied owing the balance sued for and brought a third party action against Jimmy Joe Freeman for indemnification or for judgment over for any liability that Templeton might be found to have to plaintiff bank. Freeman denied liability to anyone.

In a bench trial, the Chancellor rendered judgment against Templeton for the full balance claimed by the bank plus interest and attorney fees and then entered judgment against Freeman for one-half of that amount on Templeton's third party claim.

The bank is content with the results; does not appeal and insists that the judgment in their favor ought be affirmed.

Templeton appeals the action of the Trial Court in both the original complaint and in his third party claim and states the issues as follows:

1. That the Trial Court erred in failing to hold that the indebtedness secured by the promissory note dated July 24, 1971 was barred by the six (6) year statute of limitation set forth in T.C.A. 28–3–109.

2. That the Trial Court erred in failing to award a judgment over against the third-party defendant for the entire

amount of the judgment entered against the defendant.

In response to Templeton's appeal Freeman raises the issue of "unclean hands" and insists that as to Templeton's third party claim the proof shows Templeton to have "unclean hands" and his claim against Freeman is therefore totally barred.

A proper consideration of the issues raised by Templeton will conclude the appeal.

On appeal, as between the bank and Templeton, the execution and terms of the note are admitted. The sole issue is whether the note is in whole, or in part, or at all, barred by the statute of limitations. The note was dated July 24, 1971, in the amount of $13,-000.00 payable to Jim Freeman Motors, Inc., and negotiated for valuable consideration to the bank by Freeman Motors, Inc., in the due course of trade. The note is payable in four installments of $3,250.00 each; due in December of the years 1971, 1972, 1973 and 1974 and provides for acceleration in the event of failure to pay any installment. The note was given by Templeton to Freeman Motors, Inc., in dealings for farm equipment. The installment for the year 1971 was paid, but Templeton did not pay the 1972 or any other installment. After the first installment was paid, Templeton and Freeman had further business dealings whereby Templeton purchased certain additional mechanized farm equipment from Freeman.

All the dealings between Templeton and Freeman have a peculiar odor about them to say the least. Regarding the $13,000.00 note, both gave conflicting testimony. Not only do they each have different views of what occurred, but their own testimony is in conflict with itself. One version of Freeman's testimony is that the note was not actually given in exchange for a combine but was a scheme between Freeman and Templeton to obtain funds for Freeman's failing business. At one point he testified that he, Freeman, was actually supposed to pay the $13,000.00 to the bank. At another point he says he was not supposed to pay the note but that Templeton was. Templeton first said he was never supposed to pay the note. Then later attempted to show that he paid the first installment. Freeman says he only leased the original equipment and did not sell it to Templeton. Then, Templeton says he purchased the equipment and did not lease it. However, the one and only check given by Templeton to Freeman perhaps having to do with the $13,000.00 note had the words "lease payment" on the legend of the check. However, when the combine burned, Templeton had no difficulty deciding that the $11,-000.00 insurance proceeds were his nor did he have any difficulty in accepting a $10,-000.00 allowance for the burned combine on a trade in on a new one. It is evident to this Court as it was to the Chancellor that some sort of skulduggery was afoot. Most probably it was some sort of scheme by Freeman with the aid of Templeton to move out or sell out of trust as quickly as possible all farm equipment floor planned by International Harvester which corporation was at that time threatening to move in and regain its equipment because of the shaky financial condition of Freeman, all at bargain prices to Templeton with perhaps some future arrangements between Templeton and Freeman. Be that as it may, it is difficult for us to believe that at the time the $13,000.00 note was made, Templeton was not supposed to receive any farm equipment, but was simply going to pay $13,000.00 for Freeman's benefit out of the goodness of his heart, as first seems to be implied by Freeman in his first testimony. The record simply will not support a conclusion that Templeton is possessed of such a generous nature. What happened or what was the agreement between Freeman and Templeton at a later date when Templeton received or purchased additional equipment from Freeman (four days prior to International Harvester moving in and cleaning Freeman out), with the aid of a $20,000.00 direct loan from the bank (which he, Templeton, later paid in full) is even more muddled in conflicting testimony, permeated with the odor of fraud, than their first transaction.

However, it is uncontroverted that after the 1971 installment on the $13,000.00 note was paid; when the 1972 installment came due, Freeman, not Templeton, went to the bank and made partial payments thereafter consisting of partial interest payments to date of payment. The note was in default from the due date of the 1972 installment and at all times thereafter. It is further undisputed that the bank was aware that Freeman, not Templeton, was making the interest payments. Neither Freeman nor the witness for the bank gave any testimony about the conversations that took place at the time of those payments. It is also interesting to note that even though the note was years in default, the bank never filed suit against Templeton until it was prodded by the bank examiners.

Insofar as the issue between the bank and Templeton is concerned, the foregoing is a sufficient relation of facts.

In essence, T.C.A. § 28–3–109 provides that suits on notes must be commenced within six years after the cause of action accrued or will be barred. The determinative issue in this case is when did the cause of action accrue. Counsel for Templeton first insists that it accrued on December 1, 1972, when the second installment became in default even though the bank did not declare the balance accelerated and due. This being true, since the suit was not filed by the bank until November 28, 1980, more than six years after the right accrued, it is time barred. Counsel readily recognizes that there are reported cases in this state that have held that acceleration provisions are purely for the benefit of the creditor, but would distinguish them on the basis of the peculiar verbiage of this clause which is "Failure to make any payment causes entire balance due and payable." It is argued that such verbiage leaves no option to the holder of the note and upon first default the entire balance automatically becomes due.

■ Whether or not an acceleration clause contains optional verbiage or not is of no importance. If the clause is for the benefit of the creditor, that creditor may waive the entire clause with all its verbiage optional or not. We hold that in matters of installment notes containing acceleration clauses, the cause of action as to future non-delinquent installments does not accrue until the creditor chooses to take advantage of the clause and accelerate the balance. See *Wall v. Marsh,* (1877) 68 Tenn. 438; *Batey v. Walter,* (1897, Ct.Ch.App.) Tenn. Ch.App. 46 S.W. 1024; *White v. Hatcher,* (1915) 135 Tenn. 609, 188 S.W. 61.

■ Furthermore, the cause of action accrues on each installment when it becomes due and the Statute begins to run from that moment on that installment. Further, suit may be brought in successive actions upon each default in an installment for the amount of that defaulted installment. *Barnes Bros. v. Coal Co.,* (1898) 101 Tenn. 354, 47 S.W. 498. Whether or not the note contains an acceleration clause, exercised or not, is of no moment to the defaulted installment. All the acceleration clause does is accelerate the due date of future installments to the date of the exercise of the right of acceleration. Therefore, the cause of action accrued on the 1972 and 1973 installments in December of each of those years. The accrual of the right of action for each of those installments occurred more than six years prior to the filing of this suit.

■ However, the unconditional payment of interest by the maker of a note implies a promise of payment or reaffirmation of the debt and would toll the running of the statute. See *Graves v. Sawyer,* (1979 Tenn.) 588 S.W.2d 542. In this case, the interest payment was not made by the maker but by a secondary obligor. Evidently, the Chancellor was of the opinion that Freeman was the agent of Templeton when the interest payments were made and accordingly the statute was tolled. We are of the opinion that the evidence in this case will not warrant such a conclusion, and the evidence does not preponderate in favor of such a conclusion. We admit that the evidence might give rise to such a suspicion (as well as many others) but will not support such a conclusion especially in view of the

fact that the bank knew it was receiving funds from others than the maker of the note and offered no explanation as to the circumstance surrounding the acceptance of those payments or conversations between the bank and Freeman.

Accordingly, we must hold that the statute of limitations has run on all but the last installment of the $13,000.00 note sued upon.

When the Chancellor made his initial decision he awarded the bank judgment against Templeton for the full balance due on the $13,000.00 note and denied Templeton any recovery against Freeman on the third party action on the basis of the doctrine of unclean hands. On a petition to rehear, the Chancellor amended his first judgment as to the third party claim and allowed Templeton to recover from Freeman one-half of the judgment that had been given against Templeton in favor of the bank. In so doing, the Chancellor relied upon statements contained in legal treatises and upon the Tennessee cases of *Terrell v. Terrell,* (1955) 200 Tenn. 289, 292 S.W.2d 179; *Nolen v. Witherspoon,* (1945) 182 Tenn. 333, 187 S.W.2d 14; *Williams v. S. & W. Const. Co.,* (1934) 167 Tenn. 84, 66 S.W.2d 992; *Upchurch v. Anderson,* (1898, Ct.Ch.App.) Tenn.Ch.App., 52 S.W. 917.

As to the third party action we believe the Chancellor's first judgment was the best. The cases relied upon by the Chancellor are those which indicate there are exceptions to the application of the unclean hands doctrines. We have no quarrel with those cases. As may be perceived from the Chancellor's final judgment, he was of the opinion that Templeton had "unclean hands" but they were not all that unclean, or perhaps Freeman's hands were dirtier and accordingly the judgment ought be mitigated by the relative dirtiness of the hands of the parties.

■■■ We do not believe the Chancellor's application of the doctrine is a proper one. We concur in the Chancellor's finding that Templeton comes into Court with unclean hands but do not concur in the legal conclusion that the doctrine may be in part applied by the relative dirtiness of the parties' hands. Once found to exist, the doctrine of unclean hands repels the unclean plaintiff at the steps of the Courthouse. *Continental Bankers Life Ins. Co. v. Simmons,* (1977 Tenn.Ct.App.W.S.) 561 S.W.2d 460; *C.F. Simmons Medicine Co. v. Mansfield Drug Co.,* (1893) 93 Tenn. 84, 23 S.W. 165. The Court cannot be used to enforce partially, agreements between the parties that arise out of unconscionable, immoral or just plain "crooked" conduct. Just as one may not wash but one hand, the Court may not condone wrongdoing by halves. The cases relied upon by the Chancellor are generally those that find the doctrine inapplicable because the complainant has "clean hands" or the acts complained of occurred in dealings with third parties in which defendant had no interest. We find, as did the Chancellor, that the direct dealings between Templeton and Freeman were fraudulent with each trying to out do the other. Therefore, we reverse the judgment against the third party defendant Freeman and dismiss that claim.

The result is that the cause is remanded to the Chancery Court of McNairy County for entry of judgment against Templeton in favor of the bank for the amount of the last installment plus interest and a reasonable attorney fee based on the amount of the judgment. The bank's motion for additional attorney fees in this Court is denied.

Costs below and on appeal are assessed against the defendant Templeton.

Done in Jackson in the two hundred and seventh year of our Independence and in the one hundred and eighty-seventh year of our Statehood.

TOMLIN and McLEMORE, Special Judge, concur.