# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 19, 2013 Session

## D'ARMY BAILEY, ET AL. v. SHELBY COUNTY, TENNESSEE, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-04-0860-2      Donald P. Harris, Senior Judge**

---

### No. W2012-01498-COA-R3-CV - Filed May 16, 2013

---

Plaintiffs, former part-time Shelby County employees, claim they were wrongfully excluded from Shelby County's retirement plan. The trial court dismissed all claims based on the six-year limitations period applicable to contract actions. We affirm in part, reverse in part, vacate in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part, Vacated in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Imad Al-Deen Iben Abdullah, Bruce Anthony McMullen, JoAnn Coston-Holloway and Alan Jerome Wade, Memphis, Tennessee, for the appellants, D'Army Bailey, Stanley Kline and John Kington, M.D.

Martin Andrew Wohlfarth and G. Patrick Arnoult, Memphis, Tennessee, for the appellees, Shelby County, Tennessee, The Shelby County Retirement Board, A. C. Wharton, Jr., Betty Loveless, Osie Ward, Cleo Kirk, Tom Moss, Pat Cole, Larry Potter, Ulysses Truitt, Williams Powell, Henry Hooper and James Huntzicker, Members of the Retirement Board.

### OPINION

The issue disputed in this lawsuit is whether former part-time employees of Shelby County were wrongfully excluded from Shelby County's retirement plan. The background facts giving rise to this action are largely undisputed. Plaintiff D'Army Bailey (Mr. Bailey) was employed by Shelby County as a part-time public defender from 1974 to 1990. When he was hired, a contributory retirement plan (Plan B) was in place for Shelby County employees. As amended in 1971, Plan B included part-time employees whose employment

was regular and continuous. It provided that "[a]ll salaried employees who enter County service after September 1, 1949, shall, as a condition of such employment be members on and after the date of entering such service, except as otherwise specifically provided in the resolution creating the retirement system and any amendments thereto." Participation was optional for *per diem* employees. In 1978, the County began a new retirement plan (Plan A), which, unlike Plan B, was a non-contributory plan. Employees participating in Plan B had the option of remaining in Plan B or switching to Plan A in 1978. Employees hired after Plan A became effective were not eligible to participate in Plan B, but could participate only in Plan A. Mr. Bailey did not make contributions to Plan B.

At some point prior to September 1985, Mr. Bailey requested delayed enrollment in the Shelby County's retirement plan. By letter dated September 23, 1985, the Shelby County Administrator of Personnel informed Mr. Bailey that his request would not be approved. Mr. Bailey apparently continued to pursue the matter, and in a letter dated February 27, 1986, then Shelby County Attorney Brian Kuhn (Mr. Kuhn) advised Mr. Bailey that only the Shelby County Retirement Board was authorized to vote on whether to permit him to enroll in the retirement system. In July 1986, Mr. Bailey requested by written correspondence to be placed on the Retirement Board's agenda for its August 1986 meeting. In August 1986, Mr. Bailey also wrote to Mr. Kuhn, expressing confusion on whether he was, in fact, included in the retirement plan where at least some of his W-2 statements indicated that he was included in a pension plan. The Retirement Board placed Mr. Bailey's request on its agenda for August 1986, but ended its meeting before voting on the matter.

Neither Mr. Bailey nor the Retirement Board appears to have taken further action on the matter until early 1997, when then Shelby County Attorney Donnie E. Wilson (Mr. Wilson) responded to Mr. Bailey's inquiry into the matter. By letter dated February 24, 1997, Mr. Wilson informed Mr. Bailey that he was not eligible to participate in the County's pension plan, and advised him to pursue the matter with the Retirement Board "if necessary." Mr. Bailey responded to Mr. Wilson in 2002, acknowledging that he did not contribute to Plan B and stating, "I have never contended that I thought I was in Plan B which is a contributory plan." Mr. Bailey reiterated his position that he was nevertheless entitled to participate in Plan A, and again sought resolution of the matter by the Retirement Board. The Retirement Board finally denied Mr. Bailey's request to be included in the pension plan on March 9, 2004.

On May 3, 2004, Mr. Bailey commenced the current lawsuit by filing a timely petition for statutory writ of certiorari, declaratory judgment, injunctive relief and damages against Shelby County ("the County"), the Shelby County Retirement Board ("the Retirement Board"), and A.C. Wharton, Jr., Chairman, Betty Loveless, Osie Ward, Cleo Kirk, Tom Moss, Pat Cole, Larry Potter, Ulysses Truitt, William Powell, Henry Hooper, and James

Huntzicker, Members of the Retirement Board (collectively, Defendants) in the Chancery Court for Shelby County.[1] In his petition, Mr. Bailey asserted that when he was hired by the County in 1974, the County's retirement plan ("Plan B") as it then existed was a contributory plan that, by its terms, mandated that all salaried employees entering service of the County after September 1, 1949, "shall, as a condition of such employment, be members" and provided that "[e]ntry in the retirement system shall be optional with such employees as are employed on a per diem basis." Mr. Bailey submitted that he was not employed on a "per diem basis" but was a regular and continuous employee, and that his inclusion in Plan B accordingly was mandatory. He further asserted that Plan B did not permit any employee to opt out of the plan. Mr. Bailey alleged that, notwithstanding that inclusion in Plan B was mandatory, the County did not include him in Plan B and did not apprise him of his right to be included in Plan B. Mr. Baily alleged that the County did not obtain a written, informed or knowing waiver of his right to be included in Plan B, and that exclusion of him from Plan B violated the terms of the plan and his rights to retirement benefits. He further alleged that his benefits vested in 1984, and that he was entitled to begin receiving benefits when he turned 60 years of age in 2001.

In his petition, Mr. Bailey additionally asserted that the County closed Plan B and established Plan A, a non-contributory retirement plan, in February 1980. He also asserted that Plan A was limited to employees entering County service on or after December 1, 1978, and to employees who transferred from Plan B to Plan A and thereby ceased to be members of Plan B. Mr. Bailey alleged that he "inadvertently learned of his rights to be included in a Shelby County retirement plan years after [the County] closed out Plan B and established a new Plan A[.]" He alleged that, by the terms of Plan B, he was covered by Plan B on the effective date of Plan A; that he was never given the opportunity to contribute to Plan B because he was not informed that he was included in it; and that he accordingly was not given the opportunity to transfer from Plan B to Plan A as he should have been permitted to do by the terms of Plan A. Mr. Bailey submitted that he made repeated requests that his

---

[1] A review of the record before this Court revealed that, on the 28th of May, 2004, Defendants/Appellees, Shelby County, Tennessee, *et al.*, filed a notice of removal of this matter to the United States District Court, Western Division of Tennessee. We were unable to ascertain whether Defendants/Appellees met the federal procedural requirements to effectuate removal. Furthermore, assuming the matter was removed, we were unable to ascertain from the record before this Court whether an order was entered by the United States District Court remanding the matter to the Chancery Court for Shelby County. We accordingly were unable to determine whether the trial court had subject matter jurisdiction to adjudicate this matter. By order of April 24, 2013, this Court ordered the Appellants to show cause why this matter should not be dismissed for lack of jurisdiction. Appellants responded by furnishing this Court with a copy of an order entered in the United States District Court remanding Plaintiffs' state law and state constitutional claims to the Tennessee Chancery Court while retaining jurisdiction over the federal claims. The action in the District Court was stayed pending resolution of the state law claims.

rights to pension benefits be formally decided by the Retirement Board, and that his request was not considered or denied by the Retirement Board until March 9, 2004. He further submitted that eight members of the Retirement Board were present to vote on his request on March 9, 2004, and that four members voted to include him in the retirement plan and four members voted to deny his request. Mr. Bailey stated that the minutes of the Retirement Board's March meeting were approved on April 6, 2004.

Mr. Bailey alleged in his petition that the Retirement Board's decision to refuse to include him in the plan and deny him "his now vested retirement benefits" was arbitrary and illegal where it ignored the mandates of the County's retirement plan, and that it was not supported by sound reason. He alleged that the decision was capricious and motivated by a desire to avoid the costs of his benefits, as well as the costs of potentially providing benefits to others who also were wrongfully excluded from the retirement plan. Mr. Bailey also asserted that the Retirement Board's decision violated his due process and equal protection rights because it treated him differently than others who were similarly situated and hired by the County at the same time. He prayed for a statutory writ of certiorari pursuant to Tennessee Code Annotated § 27-9-101, to a trial pursuant to Tennessee Code Annotated § 27-9-111, and to a finding that the Retirement Board's decision was illegal. Mr. Bailey additionally prayed for a declaratory judgment that the Retirement Board's decision was unconstitutional and illegal. He also asserted a claim under 42 U.S.C. § 1983, alleging that, acting under color of state law, Defendants deprived him of his due process and equal protection rights. He prayed for a permanent injunction requiring the County to include him in Plan A and Plan B and to pay him all benefits due under the plans, an award of damages pursuant to 42 U.S.C. § 1983, attorney's fees and costs.[2]

Mr. Bailey filed a motion to bifurcate the matter in December 2005, praying the court to hear and decide the writ of certiorari separately from his declaratory judgment and 42 U.S.C. § 1983 causes of action. The parties also filed a joint motion praying the court to remand Mr. Bailey's writ of certiorari for another hearing on the basis that Mr. Bailey was not under oath and the Retirement Board did not state the reason for its denial of Mr. Bailey's application for retirement benefits. In January 2006, the trial court entered an agreed order bifurcating the matter and segregating Mr. Bailey's writ of certiorari. The trial court also entered a consent order remanding Mr. Bailey's writ of certiorari to the Retirement Board for another hearing and ordering the Retirement Board to put all witnesses under oath and to

---

[2]In April 2005, the parties entered an agreed order for the appointment of a special chancellor to hear the cause on the grounds that Mr. Bailey was currently a circuit court judge in the judicial district. In September 2005, the Tennessee Supreme Court designated a senior judge to preside over the matter.

state its reasons for either approving or denying Mr. Bailey's application for retirement benefits.

In May 2006, Mr. Bailey filed a first amended class action complaint for declaratory judgment, injunctive relief, and damages, and moved for class certification. Defendants filed an answer to Mr. Bailey's first amended complaint in May 2006, and filed its response in opposition to Mr. Bailey's motion for class certification in July 2006. In its answer, Defendants denied Mr. Bailey's allegations and asserted eight affirmative defenses, including the six-year statute of limitations applicable to contract actions provided by Tennessee Code Annotated § 28-3-109.

Mr. Bailey moved for summary judgment in December 2006, asserting that, as a matter of law, "he should have been included as a participant in Plan B and that he is now eligible for his vested benefits under either Plan B or Plan A[.]" Defendants filed their response in opposition to Mr. Bailey's motion in January 2007, denying Mr. Bailey was entitled to a judgment and re-asserting the defenses of the statute of limitations and laches. By order entered April 11, 2007, the trial court awarded Mr. Bailey partial summary judgment concluding that, as a matter of law, participation in Plan B was mandatory for regular part-time County employees hired after September 1, 1971, and that participation in Plan B could not be waived by an individual employee.

In April 2008, former County part-time employees Stanley Kline (Mr. Kline) and John Kington, M.D. (Dr. Kington) filed a motion to intervene in the matter. The trial court granted the motion on April 22, 2008. Mr. Bailey, Mr. Kline, and Dr. Kington (collectively hereinafter, "Plaintiffs") filed a motion for partial summary judgment on May 15, 2008, asserting they were entitled to summary judgment on Defendants' affirmative defenses based on the statute of limitations and laches. In their motion, Plaintiffs asserted that the applicable statute of limitations was the six-year statute of limitations applicable to breach of contract actions, and that their causes of action did not accrue until Plaintiffs attained sixty years of age, "when their benefits were due and owing." Defendants filed their response to Plaintiffs' motion for summary judgment in July 2008, again denying that Plaintiffs were entitled to retirement benefits as a matter of law and reasserting the defense of the statute of limitations. In their response, Defendants asserted that Plaintiffs' causes of action accrued when Plaintiffs knew or should have known that they were not included in the pension plan.

In February 2009, Defendants filed a motion for summary judgment on the grounds of the statute of limitations. In their motion, Defendants asserted that the undisputed facts demonstrated that Mr. Bailey requested "delayed enrollment in the Shelby County Retirement System with possible credit for past service pension purposes" in 1985, and that his request was denied in writing in July 1986 by Mr. Kuhn, who advised Mr. Bailey that the right to

inclusion in the pension plan "could and would be subject to a waiver by [an] employee even though said waiver was not specifically allowed in the Retirement System." Defendants submitted that Mr. Kuhn also observed that proof of an employee's relinquishment of his right to benefits under Plan B was clear "'since [Plan B] required a certain percentage of [the employee's] pay to be deducted on each pay check stub clearly marked retirement'" and that documentation demonstrating Plaintiffs' initial enrollment with the retirement option marked "none" further proved voluntary relinquishment. Defendants additionally asserted that the undisputed proof demonstrated that Dr. Kington was informed when he was hired in 1975 that he would be "eligible" for the County retirement plan, that he was informed that he was required to contribute to the plan in order to be eligible for a pension, and that Dr. Kington knew that he was not contributing to the retirement system. Defendants also asserted that Mr. Kline, a licensed attorney who was hired in January 1973 as a part-time divorce proctor (now called a "referee"), stated in his deposition that he recalled receiving a packet of documents and choosing various options and signing various forms when he was hired. Defendants submitted that Mr. Kline knew he was not contributing to Plan B, and that he made inquiries about retirement benefits after Plan A was opened to County employees. They asserted that, after the secretary of the divorce proctor's office informed Mr. Kline that he would not be able to join Plan A because he was not in Plan B, Mr. Kline made no further inquiry and did not attempt to appear before the Retirement Board. The County asserted that Plaintiffs' causes of action accrued when Plaintiffs discovered that they were not included in the County's retirement plan, which was well beyond the applicable six-year limitations period, and that it accordingly was entitled to summary judgment on the grounds that Plaintiffs' actions were time-barred. Defendants again moved for summary judgment in April 2009.

Defendants' motion for summary judgment on the grounds that Plaintiffs' actions were time-barred pursuant to the statute of limitations was heard by the trial court in July 2011. On May 29, 2012, the trial court entered final judgment in the matter, awarding summary judgment to Defendants on the grounds that all of Plaintiffs' claims were time-barred under the statute of limitations, and dismissing all claims. In its final judgment, the trial court concluded that Plaintiffs' causes of action accrued when each Plaintiff discovered that he had not been included in the Shelby County Retirement Plan, and not when he became entitled to benefits. The trial court determined that, based on the undisputed facts, Mr. Bailey's cause of action accrued, at the latest, sometime prior to his September 1985 request for delayed enrollment in the retirement system; that Dr. Kington's cause of action accrued at the latest in 1979, after he became aware that other part-time employees indicated that they were participating in Plan B despite information provided to him indicating that he was not eligible to participate as a part-time employee; and that Mr. Kline's cause of action accrued in the late 1970's, when he was informed that he could not be included in Plan A because he was not participating in Plan B. The trial court further concluded that Mr. Bailey was not

-6-

entitled to relief pursuant to a statutory writ of certiorari because he did not have a "viable, enforceable right" to be included in the Shelby County Retirement Plan when he appeared before the Retirement Board on March 9, 2004. Plaintiffs filed a timely notice of appeal to this Court.

## *Issues Presented*

Plaintiffs (hereinafter "Appellants") present the following issues for our review:

(1)     Did the chancery court correctly hold that Plaintiffs' declaratory judgment action and 42 USC § 1983 actions were time-barred?

(2)     Did the chancery court err by failing to sever the writ of certiorari action from Plaintiffs' declaratory judgment and 42 USC § 1983 actions?

(3)     Did the chancery court correctly hold that the writ of certiorari action was time-barred?

(4)     Did the chancery court err when it granted Defendants' motion for summary judgment although disputed issues of material fact remained regarding whether Plaintiffs knew or should have known that the Shelby County Retirement Board would not pay them their retirement benefits?

Defendants (hereinafter "Appellees") raise the following issue on cross-appeal:

Did the chancery court err when it concluded as a matter of law that the Plaintiffs-Appellants could not waive participation in the Shelby County Retirement Plan?

## *Standard of Review*

We review a trial court's award of summary judgment *de novo* with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." *Id.* at 83 (quoting Tenn. R. Civ. P. 56.04; accord *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000)). The burden of persuasion is on the moving party to demonstrate, by a properly supported motion, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* (*citing see Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The nonmoving party's "burden to produce either supporting affidavits or discovery materials is not triggered" if the party moving for summary judgment fails to make this showing, and the motion for summary judgment must be denied. *Id.* (quoting *McCarley*, 960 S.W.2d at 588; accord *Staples*, 15 S.W.3d at 88). The moving party may carry its burden by "(1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); see also *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n. 5). Additionally, a mere "assertion that the nonmoving party has no evidence" will not suffice. *Id.* at 84 (citing *Byrd*, 847 S.W.2d at 215). "[E]vidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient." *Id.* (citing *McCarley*, 960 S.W.2d at 588). Rather, "[t]he moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn.2008)(citing *Hannan*, 270 S.W.3d at 5). In order to negate an essential element, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* at 84 (citing *see Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). The motion for summary judgment must be denied if the moving party does not make the required showing. *Id.* (citing *Byrd*, 847 S.W.2d at 215).

After the moving party has made a properly supported motion, the nonmoving party must "produce evidence of specific facts establishing that genuine issues of material fact exist." *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215). To satisfy its burden, the nonmoving party may: (1) point to evidence of over-looked or disregarded material factual disputes; (2) rehabilitate evidence discredited by the moving party; (3) produce additional evidence that establishes the existence of a genuine issue for trial; or (4) submit an affidavit asserting the need for additional discovery pursuant to Rule 56.02 of the Tennessee Rules of Civil Procedure. *Id.* (citing *McCarley*, 960 S.W.2d at 588; accord *Byrd*, 847 S.W.2d at 215 n. 6). The court must accept the nonmoving party's evidence as true, resolving any doubts regarding the existence of a genuine issue of material fact in that party's favor. *Id.* (citing *McCarley*, 960 S.W.2d at 588). "'A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)(quoting *Byrd*, 847 S.W.2d at

215). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Id.* A trial court's determination that an action should be dismissed based on the applicable statute of limitations also presents a question of law that we review *de novo* with no presumption of correctness. *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012)(citation omitted).

### *Mr. Bailey's Petition for Writ of Certiorari*

We turn first to Appellants' assertion that the trial court erred by failing to bifurcate Mr. Bailey's writ of certiorari action from Appellants' declaratory judgment action and 42 U.S.C. § 1983 claims and, accordingly, erred by dismissing the action as time-barred. We agree with this assertion. As an initial matter, the petition was timely filed pursuant to Tennessee Code Annotated § 27-9-102. Additionally, as noted above, in January 2006 the trial court bifurcated this action, segregated Mr. Bailey's petition for certiorari, and remanded the matter to the Retirement Board. Upon review of the record transmitted on appeal, it does not appear that the Retirement Board has acted on the matter on remand. No administrative record is included in the record before us, and neither the parties nor the trial court reference any action by the Retirement Board on remand. Accordingly, it appears that issues raised in Mr. Bailey's petition for writ of certiorari were not before the trial court when final judgment was entered in the matter in May 2012, and the trial court was without jurisdiction to adjudicate the matter. We accordingly vacate the trial court's award of summary judgment to Appellees with respect to Mr. Bailey's petition for writ of certiorari.

### *Accrual of the Causes of Action*

We turn next to Appellants' assertion that the trial court erred by dismissing their declaratory judgment actions based on the six-year statute of limitations. A defense based on the statute of limitations involves three considerations: "the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012). Because the elements are inter-related, they "should not be considered in isolation." *Id.* (citing Carli McNeill, Note, *Seeing the Forest: A Holistic View of the RICO Statute of Limitations*, 85 Notre Dame L.Rev. 1231, 1231 (2010)).

In the current case, the parties agree that the six-year limitations period applicable to contract actions applies to Appellants' claims. They disagree, however, with respect to when Appellants' causes of action accrued. Appellees assert, and the trial court held, that Appellants' actions accrued when they discovered that the County did not intend to include them in the County's retirement plan. Appellants, on the other hand, assert that an agreement

to provide pension benefits is an installment contract, and that their actions accordingly did not accrue until the first retirement benefit payment became due. They assert their actions therefore accrued, at the earliest, when they attained sixty-years of age because they were not entitled to receive benefits "until at least the age of sixty" under Plan B. Appellants state in their brief that they had "no legal right to receive these payments until they reached either 60 or 65 years of age, depending on whether the requirements of Plan A or Plan B are applied." Appellants rely on *Aschbacher v. Woods*, No. M2003-02616-COA-R3-CV, 2005 WL 473468 (Tenn. Ct. App. Mar. 1 2005) for the proposition that, because the right to receive periodic payments under a pension is a continuing one, the contract allegedly breached by the County in this case is properly characterized as an installment contract. They contend that their action accordingly did not accrue until the first pension payment installment became due. They contend Mr. Bailey's cause of action accrued, at the earliest, when he turned 60 in 2001; that Mr. Kline's cause of action accrued, at the earliest, when he turned 60 in 2002; and that Dr. Kington's cause of action accrued, at the earliest, when he turned 60 in 2006.

Defendants, on the other hand, assert that, although pension benefits are payable in installment payments, this action is not one alleging default of an installment payment. They submit that the question presented by this action is whether Appellants are entitled to be included in the County's pension plan. The question of law presented by this action, as we perceive it, is whether Appellants were wrongfully denied the opportunity to participate in Plan A where they did not contribute payments to Plan B. This question requires the court first to construe the provisions of Plan B to determine whether Appellants were necessarily participants in the plan notwithstanding the fact that the did not contribute to it. Assuming participation in Plan B was mandatory and could not be waived, the court must next construe Plan A to determine whether employees who did not contribute to Plan B nevertheless were entitled to exercise the option to participate in Plan A. Assuming employees who did not contribute to Plan B nevertheless were entitled to exercise the option to participate in Plan A, the court would next be required to determine the extent of benefits to which those employees were entitled under Plan A.

The purpose of statutes of limitations is to "promote fairness and justice." *Redwing*, 363 S.W.3d at 456 (citation omitted). As the courts have noted, however, "'the law concerning statutes of limitations fairly bristles with subtle, intricate, often misunderstood issues.'" *Id.* (quoting *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 849 (7th Cir. 1996), abrogated on other grounds by *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-95, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997)). Statutes of limitations "are based on the presumption that persons with the legal capacity to litigate will not delay bringing suit on a meritorious claim beyond a reasonable time." *Id.* at 456 (citations omitted). They

-10-

(1) promote stability in personal and business relationships, (2) give notice to defendants of potential lawsuits, (3) prevent undue delay in filing lawsuits, (4) avoid the uncertainties and burdens inherent in pursuing and defending stale claims, and (5) ensure that evidence is preserved and facts are not obscured by the lapse of time or the defective memory or death of a witness.

*Id*. (internal citations omitted).

As a general rule, an action for breach of contract accrues when one party demonstrates a clear intention not to be bound by the contract. *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009). In the context of an installment contract, it has long been held that an action for the failure to pay amounts due on a particular installment accrues when that installment becomes due, thus the statute of limitations applicable to that installment runs from the time the installment is due. *Farmers and Merchants Bank v. Templeton*, 646 S.W.2d 920, 923 (Tenn. App. 1982). Additionally, successive actions may be commenced upon each failure to pay for the amount of the defaulted installment. *Id.* (citing *Barnes Bros. v. Coal Co.*, (1898) 101 Tenn. 354, 47 S.W. 498)).

In this case, Appellants assert that this action is properly characterized as an action to recover amounts due under an installment contract. As noted above, Appellants rely on *Aschbacher v. Woods* for the proposition that the courts of this State have recognized that actions to determine a plaintiff's rights to receive benefits under a pension plan does not accrue until the first pension installment becomes due. We must disagree.

We note, as an initial matter, that Appellants do not clarify whether they assert claims to pension benefits under Plan B or Plan A. Further, as noted above, Appellants assert that their causes of action did not accrue until they attained either 60 or 65 years of age, depending on which retirement plan is applicable, where pension benefits were available at age 60 under Plan B and at age 65 under Plan A. It is undisputed, however, that Appellants did not contribute to Plan B, which was a contributory plan. Accordingly, assuming, as Appellants assert, that they were mandatorily included in Plan B as a condition of their employment, such participation would not entitle Appellants to pension benefits under Plan B in the absence of employee contributions to the contributory plan. To the extent that Appellants assert claims for benefits under Plan A, and assuming that Appellants correctly assert that no cause of action accrues until benefits become payable, then Mr. Bailey's and Mr. Kline's actions (filed in 2004 and 2008, respectively) would not accrue until 2007 and 2009, respectively. In short, Appellants' contention is not that the County failed to pay them an installment as due, but that the County wrongfully excluded them from enrollment in the pension system.

To the extent that dicta in a footnote in *Aschbacher v. Woods*, No. M2003-02616-COA-R3-CV, 2005 WL 473468 (Tenn. Ct. App. 2005), an unreported case, may be construed to stand for the proposition that a cause of action to determine whether a claimant has been wrongfully excluded from an employer's pension plan does not accrue until the first installment is due, we respectfully disagree.[3] In *Bryson v. City of Chattanooga*, 338 S.W.3d 517 (Tenn. Ct. App. 2010), plaintiff police officers sought a declaration that they were permitted to buy back retirement credit for the time they were employed by the City in other departments. The trial court awarded summary judgment to the City of Chattanooga on the grounds that the action was time barred. As in the current case, the gravamen of the issue in *Bryson* was the extent of plaintiffs' rights to benefits under a pension plan. Similarly, the determinative issue in *Bryson* was not what limitations period applied, but when plaintiffs' cause of action accrued.

*Bryson* involved constitutional challenges to a 1986 amendment to the City of Chattanooga ordinances that created a June 1, 1987, deadline for employees to pay into the pension fund for retirement credit that they elected to take towards retirement. Plaintiffs in *Bryson* filed a declaratory judgment action in April 2006, seeking a declaration that the 1986 ordinance was void as unconstitutional where it violated their due process and equal protection rights, impaired vested and unvested contract rights, constituted an *ultra vires* act, and was an impermissible taking of their property rights without compensation. *Bryson*, 338 S.W.2d at 519-22. They alleged that:

---

[3] In *Aschbacher v. Woods*, No. M2003-02616-COA-R3-CV, 2005 WL 473468 (Tenn. Ct. App. 2005), plaintiff, conveyed the remainder of her interest in real property to her niece in exchange for her niece's promise to care for plaintiff in her declining years. Plaintiff, a childless widow, was 67 years of age when the contract was made. The niece provided care for a time, but eventually ceased to care for plaintiff. In June 2004, Plaintiff sought to rescind the deed for failure of consideration. The trial court determined that the action was barred by the six-year limitations period where defendant niece first breached her obligation in 1992. On appeal, we reversed upon determining that the contract was a continuing obligation. In a footnote in *Aschbacher*, we stated:

> Similar to continuing contracts are installment contracts where there is an obligation by one party to make payments on specified future dates. The failure to make each payment would give rise to a separate cause of action, and the statute of limitations would run from the time of each breach. *Collins v. Summers Hardware and Supply Co.*, 88 S.W.3d 192, 198 (Tenn.Ct.App.2002). *See also Conway v. Bughouse, Inc.*, 105 Cal.App.3d 194, 164 Cal.Rptr. 585, 588 (Cal. App.1980) (The right to receive periodic payments under a pension is a continuing one, and any time limitation upon the right to sue for each installment begins to run from the time when the installment actually falls due.)

*Id*. at *2.

in 1986, they did not know that the Pension Board was considering revising the provision which allowed them to purchase credit for time served in other departments. Plaintiffs went on to state that: (1) they did not know the Pension Board voted on May 8, 1986, to eliminate the right to purchase credit for time served in other departments; (2) they did not know that on August 19, 1986, the Chattanooga City Commission called for a referendum with regard to whether to change the provision allowing them to purchase credit for time served in other departments; (3) they did not know the November 4, 1986, referendum on the ballot involved the elimination of the provision allowing them to purchase credit for time served in other departments; and (4) they did not know that there was a June 1, 1987, deadline for purchasing credit for time served in other departments. Plaintiffs further asserted that during the six year period following the June 1, 1987 deadline, a total of twelve police officers were offered the opportunity to purchase credit for time served in other City departments, and eleven of the twelve officers did so, and that this amounted to a violation of the equal protection clause because Plaintiffs were not allowed this same opportunity.

*Id.* at 520.

Assuming the maximum ten-year limitations period, we affirmed summary judgment in favor of the City of Chattanooga based on expiry of the statute of limitations, stating:

It [was] inescapable that Plaintiffs either were or should have been aware of the alleged wrongful conduct (i.e., the establishment of a cut-off date of June 1, 1987, in which to buy back retirement credit for time spent in other City departments) at the very latest on November 4, 1986, when the referendum was passed by the voters. When the referendum was passed on November 4, 1986, anyone employed in the police or fire departments knew or should have known at that time that they had until June 1, 1987, in which to buy back retirement for time spent working in other city departments. Accordingly, we hold that any applicable statute of limitations began to run on November 4, 1986.

*Id*. at 527.

As we observed in *Bryson*,

[A] plaintiff may not . . . delay filing suit until all the injurious effects and consequences of the alleged wrong are actually known to the plaintiff. Wyatt v. A-Best Company, 910 S.W.2d 851, 855 (Tenn. 1995). Similarly, the statute of limitations is not tolled until the plaintiff actually knows the "specific type of legal claim he or she has," *Stanbury [ v. Bacardi*, 953 S.W.2d 671], at 672

-13-

[ (Tenn.1997) ], or that "the injury constitute[d] a breach of the appropriate legal standard," *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994). Rather, as we have recently emphasized, the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. *Stanbury*, at 677; *see also Roe*, 875 S.W.2d at 657 ("[T]he plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct."). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." *Stanbury*, at 678. Such knowledge includes not only an awareness of the injury, but also the tortious origin or wrongful nature of that injury. *Hathaway v. Middle Tennessee Anesthesiology, P.C.*, 724 S.W.2d 355, 359 (Tenn. App. 1986).

*Id*. at 526 (quoting *Shadrick v. Coker*, 963 S.W.2d 726, 733-34 (Tenn. 1998)).

As stated above, the question in this case is not whether the County defaulted on contractual installment payments. Rather, the issue in this case is whether the County wrongfully refused to permit Appellants to participate in the pension system. Having determined that Appellants' causes of action accrued when they discovered their injury - that they were not included in the County retirement system - we turn to whether a genuine issue of material fact exists regarding when Appellants discovered that they would not be included in the County's retirement system.

### *Discovery of Alleged Breach*

Appellants assert that the trial court erred by awarding summary judgment to Defendants where genuine issues of material fact exist with respect to when Appellants knew or should have known that the County would not provide them with pension benefits. Mr. Kline and Dr. Kington assert that they did not know that they were entitled to pension benefits and that, therefore, they "did not know that Shelby County was denying [them] benefits to which [they were] entitled." They assert that a genuine issue of material fact therefore exists with respect to when they knew that the County did not intend to provide them with pension benefits.

Upon review of the record, we agree with the trial court that the undisputed facts demonstrate that Appellants were on notice that a retirement system existed, that they were not enrolled as participants, and that the County did not intend to provide them with retirement benefits decades before this action was commenced in 2004. What a plaintiff

-14-

knew or should have known may be determined by notice that may be attributed to the plaintiff. *Blevins v. Johnson County*, 746 S.W.2d 678, 682 (Tenn. 1988). Notice may be actual, inquiry or constructive notice. Actual notice "'[does] not always mean in law what in metaphysical strictness [the words] import[.]'" *Id.* at 683 (quoting *Texas Co. v. Aycock*, 190 Tenn. 16, 27, 227 S.W.2d 41, 46 (1950) (citation omitted). Rather, it includes knowledge of sufficient facts and circumstances that enable a reasonably cautious person to investigate and ascertain the facts. *Id.* (citation omitted). Accordingly, "'[w]hatever is sufficient to put a person upon inquiry[] is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and good faith.'" *Id.* (quoting *City Finance Co. v. Perry,* 195 Tenn. 81, 84, 257 S.W.2d 1, 2 (1953) (citation omitted)). "Even a good faith failure to undertake the inquiry is no defense." *Id.* (citation omitted). "'Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, [he] must decide whether to file suit or sit on [his] rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; [he] cannot wait for the facts to find [him].'" *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 723 (Tenn. Ct. App. 2008)(quoting *Mark K. v. Roman Catholic Archbishop of L.A.*, 67 Cal. App.4th 603, 79 Cal. Rptr.2d 73 (1998)).

In his May 5, 2008, deposition, Mr. Kline testified that he received a packet of documents when he was hired in 1973 and that he "went through it" and "signed things." He stated that he specifically chose the health insurance that was offered by the County, but that he did not recall whether he received any information about a retirement plan. He testified, "it's possible they gave me some kind of retirement form to sign." Mr. Kline stated that when Plan A was instituted in 1978 he inquired into it and testified that he received "some forms for signing up for a new retirement plan." He testified that he asked the secretary whether he could join Plan A and was told that he could not because he was not participating in Plan B. Mr. Kline testified that he made no further inquiry and did not inquire with the Retirement Board. Mr. Kline further testified that some 10 to 15 years prior to the date of his deposition he received a notice from the IRS indicating that a deficiency as a result of contributing to an IRA despite participating in the County retirement plan and that, as a result, he contacted Mr. Kuhn, who told him that the W-2's that were issued reflecting participation in a retirement plan were issued in error. The matter with the IRS subsequently was resolved in Mr. Kline's favor. We affirm summary judgment in favor of the County on Mr. Kline's claims.

Dr. Kington testified by deposition on June 3, 2008, that when he was hired in 1975 he was told that he would be eligible for retirement benefits. He testified that he had "no retirement prospects whatsoever" at the time, that "the retirement was a consideration[,]" and that he was interested in the retirement benefits offered by the County. Dr. Kington testified that retirement benefits were offered to him, and that he was informed that he would be required to "pay into it." He further testified that he tried to participate, but at some point was

told by someone in the Probate Court Clerk's office that he was not eligible because he was a part-time employee. Dr. Kington testified that he continued to inquire, and was told by Jimmy Moore (Mr. Moore) that he was indeed eligible to participate in the retirement plan. Dr. Kington testified that he continued to inquire for over three years, receiving contradictory answers from various offices. He stated that he eventually "just gave up . . . because I didn't know where else to go." We affirm summary judgment in favor of the County on Dr. Kington's claims.

Although Mr. Bailey pursued this matter with the Retirement Board beginning in 1986, the Shelby County Attorney unambiguously informed Mr. Bailey that the County did not intend to provide Mr. Bailey with pension benefits where Mr. Bailey did not contribute to Plan B before Plan A was instituted. Contrary to Mr. Bailey's assertion in his brief that "there was no clear repudiation of Shelby County's duty to provide benefits and no breach could have occurred prior" to the Board's March 2004 decision, the record reflects that in 1986 Mr. Kuhn informed Mr. Bailey that "the County [had] never placed [him] in the Retirement System[.]" Notwithstanding statements by Mr. Kuhn and Mr. Wilson that only the Retirement Board was authorized to approve delayed enrollment in the pension plan, Mr. Bailey points us to nothing that would suggest that he was required to exhaust all administrative remedies before commencing a declaratory judgment action. We affirm summary judgment in favor of the County on Mr. Bailey's declaratory judgment action and 42 U.S.C. § 1983 claims.

### *Waiver of Participation in Plan B*

In light of our above holding affirming summary judgment in favor of Defendants and dismissing Appellants' declaratory judgment actions and 42 U.S.C. § 1983 claims as time-barred, and in light of the trial court's remand of Mr. Bailey's claim for pension benefits to the Retirement Board, we find summary judgment on this issue to be premature. The trial court's judgment that, as a matter of law, a part-time employee could not waive participation in Plan B is vacated as premature in light of the procedural posture of this matter.

### *Holding*

We reverse summary judgment in favor of Defendants on Mr. Bailey's petition for writ of certiorari. Summary judgment in favor of Defendants on Appellants' declaratory judgment actions and 42 U.S.C. § 1983 claims on the basis of expiry of the statute of limitations is affirmed. Summary judgment in favor of Appellants on the issue of whether part-time employees could waive participation in Plan B is vacated as premature. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs. Costs of this matter on appeal are taxed one-half to the Appellees, Shelby County, the Shelby

County Retirement Board, A. C. Wharton, Jr., Betty Loveless, Osie Ward, Cleo Kirk, Tom Moss, Pat Cole, Larry Potter, Ulysses Truitt, William Powell, Henry Hooper, and James Huntzicker and one-half to the Appellants, D'Army Bailey, Stanley Kline, and John Kington, and their surety, for which execution may issue if necessary.

_____

DAVID R. FARMER, JUDGE