Filed 11/27/13  Garrison v. OneWest Bank CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANN GARRISON,<br><br>           Plaintiff and Appellant,<br><br>v.<br><br>ONEWEST BANK, FSB, et al.,<br><br>           Defendants and Respondents. | A136390<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-09-491020) |

Plaintiff Ann Garrison sued several defendants involved in the foreclosure of a mortgage on her residence.  Ultimately, the trial court sustained a demurrer without leave to amend to the sole claim of her sixth amended complaint, finding the claim barred by the statute of limitations.  We affirm.

## I.  BACKGROUND

Garrison filed suit against defendants on August 3, 2009, alleging causes of action for negligence, breach of contract, fraud, and other theories in connection with the foreclosure on her residential mortgage.  After a series of demurrers by defendants, Garrison filed her sixth amended complaint (complaint) on January 26, 2012.  The complaint alleged Garrison had purchased a home in San Francisco in 1998.  In 2005, she refinanced.  At some point in 2008, foreclosure proceedings were instituted, but Garrison was able to pay the amount demanded.  In December of that year, however, defendants demanded much larger payments, and Garrison ultimately lost the home to foreclosure.

In the complaint's only cause of action, for breach of contract, Garrison alleged that although the promissory note carried an initial interest rate of 1 percent, the interest

rate became variable after May 1, 2005, adjustable monthly. The variable interest rate was to be determined on the basis of an index calculated according to "the twelve month average of monthly yields on actively traded United States Treasury Securities, adjusted to a constant maturity of one year." The note stated this index was published monthly in "Federal Reserve Statistical Release G13." Under the terms of the note, if that index became "no longer available," the note holder was entitled to choose a new index "based upon comparable information," with notice to the promisor. Garrison alleged the Federal Reserve had discontinued the specified index in 2002 and she had never been given notice of a substitute. As a result, she alleged, "Defendants never had any basis for calculating an interest change from the initial 1% rate."

Defendants filed a demurrer arguing the complaint was barred by the statute of limitations for actions on a written contract, since her original complaint had not been filed until more than four years after May 1, 2005, when the variable interest rate became effective. (Code Civ. Proc., § 337, subd. (1).) In her opposition, Garrison explained she first discovered the discontinuance of the Federal Reserve index after she read a real estate law guide book while preparing to file this action in 2009. The guide book suggested investigating whether the borrower's interest rate had been properly calculated. When Garrison looked for the index, she discovered it had been discontinued.[1]

The trial court sustained the demurrer without leave to amend, explaining in its order, "Plaintiff's sole cause of action for breach of contract is barred by the applicable statue [*sic*] of limitations and Plaintiff has failed to plead sufficient facts to show her entitlement to tolling, even though she was previously given a leave to amend to address this deficiency."

## II. DISCUSSION

Arguing several theories, Garrison contends the trial court erred in finding her action barred by the statute of limitations.

---

[1] In an earlier pleading, Garrison had acknowledged the discontinuance was officially posted on the Federal Reserve Web site.

2

"To determine whether a demurrer was properly sustained, we review the allegations of the operative complaint for facts sufficient to state a claim for relief. In doing so, we treat the demurrer as admitting all material facts properly pleaded. ' "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." ' " (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 866.) "The application of the statute of limitations on undisputed facts is a purely legal question [citation]; accordingly, we review the lower courts' rulings de novo. We must take the allegations of the operative complaint as true and consider whether the facts alleged establish [the] claim is barred as a matter of law." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*).)

"[T]he statute of limitations exists to promote the diligent assertion of claims, ensure defendants the opportunity to collect evidence while still fresh, and provide repose and protection from dilatory suits once excess time has passed. [Citations.] . . . [¶] The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. [Citations.] Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' [Citation.] This is the 'last element' accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.' [Citations.] [¶] To align the actual application of the limitations defense more closely with the policy goals animating it, the courts and the Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods. These doctrines may alter the rules governing either the initial accrual of a claim, the subsequent running of the limitations period, or both." (*Aryeh, supra*, 55 Cal.4th at pp. 1191–1192.)

Garrison first contends the trial court's order failed to comply with Code of Civil Procedure section 472d, which requires an order sustaining a demurrer to contain "a statement of the specific ground or grounds upon which the decision or order is based." As noted above, the trial court stated in its order: "Plaintiff's sole cause of action for breach of contract is barred by the applicable statue [*sic*] of limitations and Plaintiff has

3

failed to plead sufficient facts to show her entitlement to tolling." This is sufficient to satisfy section 472d, which requires the court "to state the specific grounds for its decision" but does not require the court "to state its reasons for sustaining the demurrer on the specified grounds." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111.)

Garrison also argues her cause of action should be deemed to have accrued on a later date than May 1, 2005, alternatively proposing the dates when defendants commenced foreclosure proceedings, when she first consulted counsel, when she commenced her action, or when she first learned of the failure to notify her of the changed index. A cause of action ordinarily accrues when suit may be maintained, such as when a wrongful act occurs or upon the occurrence of the last element essential to the cause of action. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815.) Garrison could have brought her action as soon as defendants began to charge her a rate of interest above 1 percent, since all of the elements of the cause of action— defendants' breach and injury as a result of the breach— had occurred when defendants first began to calculate her interest charges on the basis of an undisclosed index. According to the allegations of her complaint, that date was May 1, 2005.

Garrison argues she might not have suffered net injury from the charging of a higher interest rate at that time, since "she was reported to the IRS to have paid more interest than she actually had." The charging of an unauthorized interest rate above 1 percent necessarily caused damage to Garrison, even if she mitigated that impact by taking a larger income tax deduction than was actually warranted.[2]

---

[2] Garrison also claims damages at this time were "nominal," and therefore did not trigger the statute of limitations. The "nominal damages" doctrine is ordinarily applied to tort claims, when breach of a duty does not cause immediate appreciable harm (see *International Engine Parts, Inc. v. Fedderson & Co.* (1995) 9 Cal.4th 606, 614), rather than to contract claims. Regardless, because the complaint does not contain allegations about the nature of Garrison's damages at the time, we have no basis to invoke the doctrine.

Garrison argues accrual should be delayed until she discovered the failure to notify, but the "discovery rule" is applied in breach of contract actions only when the breach "is committed in secret" or is concealed. (*William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1309, 1311.) There is no allegation defendants attempted to conceal their failure to notify her, and their change in the interest rate was necessarily disclosed. In any event, defendants' decision to raise the interest rate was sufficient to put Garrison on inquiry notice, thereby triggering accrual even under the discovery rule. A reasonable person would view the imposition of a higher interest rate as sufficient reason to inquire whether the increase was contractually permitted. (See, e.g., *Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 962.)

Garrison next seeks to invoke the "continuing accrual" doctrine. As explained in the leading case, *Aryeh*, "we have long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations. . . . [¶] Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.' [Citation.] Because each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation [citation]—each may be treated as an independently actionable wrong with its own time limit for recovery." (*Aryeh, supra*, 55 Cal.4th at pp. 1198–1199.)

In order to determine whether the continuous accrual doctrine applies to a particular transaction, the court must look to "the nature of the obligation allegedly breached." (*Aryeh, supra*, 55 Cal.4th at p. 1200.) In *Aryeh,* the defendant was alleged to have included illegal charges in its periodic bills for equipment leasing. The court found the continuous accrual doctrine applicable because "the duty [the defendant] owed—the duty not to impose unfair charges in monthly bills—was a continuing one, susceptible to recurring breaches. Accordingly, each alleged breach must be treated as triggering a new statute of limitations." (*Ibid.*) It is not unusual to apply the doctrine when a breach involves the making of periodic payments, since each payment may constitute a new breach of the agreement. (E.g., *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997)

5

57 Cal.App.4th 1334, 1344 [lease]; *Conway v. Bughouse, Inc.* (1980) 105 Cal.App.3d 194, 200 [installment contract].) However, continuing injury from a completed breach does not extend accrual of the cause of action. (*Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737, 743.)

According to the allegations of Garrison's complaint, defendants were entitled to use an index different from the one disclosed by Federal Reserve Statistical Release G13 if the G13 index became no longer available, so long as the new index was "based upon comparable information" and notice was given to the promisor. Defendants were therefore not in breach of the note merely by charging an interest rate calculated under an index different from the one specified in the note. Further, Garrison does not allege that the substitute index selected by defendants violated the requirements of the note—for example, by not being based upon "comparable information." Rather, her allegation is that defendants adopted use of a new index without providing her proper notice under the terms of the note. The duty to provide such notice, of course, arose simultaneously with defendants' first use of a new index, in May 2005.

Under these circumstances, we find the continuous accrual doctrine inapplicable to extend the time for filing suit. Defendants' breach occurred in 2005, when they adopted use of a new index without providing notice to Garrison. In the absence of an allegation the new index was in some manner improper or not in compliance with the requirements of the note, there was no new breach each time defendants used it. Rather, the breach occurred once, when the index was adopted without notice, and had, at most, a continuing effect through the repeated calculation of interest due. This insufficient to allow invocation of the continuous accrual doctrine. (*Vaca v. Wachovia Mortgage Corp., supra,* 198 Cal.App.4th at p. 743.)

Garrison next invokes the doctrine of equitable tolling. That doctrine stays the time for pursuing one remedy "when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies" (*Aryeh, supra,* 55 Cal.4th at p. 1192), ordinarily while a plaintiff pursues a formal administrative remedy rather than litigation. (See generally *Bjorndal v. Superior Court* (2012) 211 Cal.App.4th 1100, 1106–1107.)

6

Garrison does not allege the pursuit of any other formal remedy prior to bringing suit. Although she claims to have engaged in negotiations with defendants, she cites no case law holding that the doctrine of equitable tolling is triggered by informal attempts to resolve a dispute.

Garrison also contends in her brief she was mentally incapacitated during a portion of the time, as stated in her second and third amended complaints. We have examined those pleadings, which are in the clerk's transcript, and we found no allegations of incapacity. Although her fourth amended complaint does allege Garrison suffered a "slow mental breakdown," the circumstances alleged do not describe sufficient incapacity to qualify for tolling. Garrison, for example, alleges that during this time of purported incapacity, she "somehow managed to keep my bills paid . . . and maintain a credit score above 700." Those are beyond the ability of a legally incapacitated person. (See *Hsu v. Mt. Zion Hospital* (1968) 259 Cal.App.2d 562, 571 [mental incapacity requires "a condition of mental derangement which renders the sufferer incapable of caring for his property or transacting business, or understanding the nature or effects of his acts"].)

Finally, Garrison contends she should be treated differently because she is a pro. per. litigant. (E.g., *Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 564 ["Where a section 1983 [(42 U.S.C. § 1983)] complaint is drafted by a pro. per. litigant, it is held 'to less stringent standards than formal pleadings drafted by lawyers.' "].) Although pro. per. litigants are certainly entitled to greater leeway than counsel, it has never been suggested that "procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." (*McNeil v. United States* (1993) 508 U.S. 106, 113, fn. omitted.) Garrison has already been given exceptional consideration by the trial court; she was allowed to amend her complaint five times before the court finally dismissed her action.[3] The failure to comply with the statute of

---

[3] We do not understand Garrison to argue the trial court abused its discretion in refusing to permit the filing of a seventh amended complaint, but we would find no abuse of discretion on this record in any event.

7

limitations bars a cause of action equally for all plaintiffs, whether or not represented by counsel.

## III.  DISPOSITION

The judgment of the trial court is affirmed.

_____

                                        Margulies, Acting P.J.


We concur:


_____

Dondero, J.


_____

Sepulveda, J.*

---

* Retired Associate Justice of the Court of Appeal, First Appellate District assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.